# HOME INSURANCE COMPANY

## V.

# BELLE FIELD.

*Fire Insurance—Homestead and Dower—Policy—Conditions—Breach
—Waiver—Evidence—Instructions.*

1. A woman can not have two unassigned estates of homestead existing at the same time.

2. A widow, who, having an estate of homestead unassigned, marries again, can not retain such estate by continuing in possession by a tenant, where her second husband has a homestead.

3. The law does not impose upon a widow having an estate of homestead, the duty and obligation of preserving the buildings involved, by insurance against fire, and of applying money received from such insurance to the rebuilding thereof, in case of destruction by fire, so that the heir shall not be deprived of the inheritance.

4. Where it is provided in a policy that the company shall not, in any event, be liable for an amount greater than a certain proportion of the value of the property covered, and that it will only indemnify assured, the jury should not be instructed that if they find for the assured they may award whatever the evidence shows the property to have been worth.

5. Where a policy provides that assured may recover a certain percentage of her interest in given property, she may so recover although the interest is only a dower interest.

6. In a litigation concerning the separate property of a wife, or insurance policies covering her property, her husband can lawfully testify in her behalf.

7. A provision providing that the company will not be liable for loss by fire until the premium is actually paid, is legal, but may be waived. The burden of proving a waiver is upon the party who asserts it.

8. To constitute a waiver of such a provision on the ground of extension of credit, so that a court will be justified in ignoring it as a part of the contract of insurance, the existence of an indebtedness from the assured to the company, for the premium, must appear.

9. An option of taking a policy at any time during a given month, by paying the premium thereon, is not an extension of credit, but rather a refusal of credit. Such option can not be exercised after the property has been destroyed.

10. Evidence tending to show breaches of the conditions of a policy, in that assured was not sole owner of the property, also false and fraudulent representations in his proofs of loss, and that the property was vacant and unoccupied when burnt, may be given under the general issue when the action is in assumpsit, and it is proper to sustain demurrers to pleas setting up the same.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Greene County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. JAMES R. WARD, for appellant.

Messrs. MARK MEYERSTEIN and WITHERS & RAINEY, for appellee.

BOGGS, J.   This is an action of assumpsit, brought by appellee, to recover upon an insurance policy issued by the appellant company.   The policy bears date October 31, 1889, and purports to insure a frame store house in the sum of $400, and certain articles therein in the sum of $135, as the property of the appellee.   This policy came into the possession of the appellee under the following circumstances:

John Scott, an agent of the appellant company to solicit applications for insurance upon farm property, came to Bates & Morrow, appellant's agents at Roodhouse, Illinois, who had power to write policies for the appellant company, and requested that this policy be written.   It was at his request written, and held by Bates & Morrow for some days, for payment of the premium.

Afterward, at Scott's request, the policy was handed to him to be by him left with one W. H. Pinkerton, a merchant in Roodhouse.   It was so left with Pinkerton, who was authorized to deliver it to the appellee if the premium was paid during the month of November.   No written or other application for insurance is shown to have been made by the appellee, and the record is entirely silent as to any arrangement or agreement between Scott and her as to the policy or the premium thereon. All that is shown is, that the policy was written at the request of Scott and left with Pinkerton, to be delivered to the appellee or her husband if the premium was paid during the month of November.   On the night of the 24th of November, at which time the policy was yet in Pinkerton's possession, the building and its contents were consumed by fire.   In the forenoon of the next day, the husband of appellee came to Pinkerton's

store and without making known the destruction of the property, though the same was well known to him, paid the premium and received the policy. Pinkerton at once paid the money to Bates & Morrow, while both he and they were ignorant of the fact that the store house had burned.

One of the provisions of the policy is, that the appellant shall not be liable for any loss thereunder until the premium is actually paid. This appellee contends may be waived, and is waived, if the assured is granted an extension of time in which to make payment.

If the agents of appellant had delivered the policy to the appellee upon her promise that she would pay the premium in the future, it may be conceded that a waiver of such a provision would be declared; or, if it appeared that upon her promise of payment of the premium in the future, the agents had prepared the policy and retained it for payment—or delivered it to another person to be delivered, if the payment be made within the agreed time—then there might be force in a claim that such stipulation of the policy should be deemed to have been waived and the insurance company held liable if loss occurred within the time fixed for payment, though before actual payment of the premium. In either of these supposed cases there is a promise of the assured to pay, and of the company to insure, and an extension of the time of payment given, which would constitute a contract binding upon both parties thereto and would operate to waive a provision in the policy exempting the insurance company from a loss occurring before the premium fell due under the contract.

The provision of the policy in question is one that may lawfully be made, and when made must be enforced unless a waiver is proven. The burden of proving such waiver is upon the party who asserts it. There being nothing in this record from which it can be known that the appellee ever applied for this insurance, or that she ever, either by an expressed or implied contract, became in any way boundt o pay the premium, or that she intended to accept the policy, an essential element of a contract is wholly wanting. The policy was prepared and left with Pinkerton, who was instructed to

give it to her if she did pay the premium, but there is an
entire absence of proof obligating the appellee to pay at any
time.    To constitute a waiver of the provision under consid-
eration, so that a court would be justified in ignoring it as a
part of the contract of insurance, the existence of an indebted-
ness from the appellee to the appellant company, for the pre-
mium, must appear in the proofs.

It can not, it seems to us, be said in this case that an exten-
sion of time of payment of an indebtedness of the appellee
was granted, because no indebtedness appears.    An option of
taking the policy at any time during the month by paying the
premium thereon, was proffered to the appellee.    Such is
not an extension of credit but is rather a direct refusal of
credit.    The option given her could not in fairness or justice
be exercised after the property had been destroyed.    At the
time of the fire there was no obligation on the part of the
appellee to pay the appellant company for indemnity, and as
the obligations of contracting parties must be mutual, there
was then no obligation on the part of the appellant company
to make good the loss.    The judgment is not, therefore, sup-
ported by the evidence and must be reversed.

As the case will again be heard, it is necessary that we
should consider other alleged errors involving questions of
law that must arise upon the future hearing.    The second,
third, fourth and fifth of appellant's pleas set out separate
alleged breaches of the conditions of the policy, *i. e.*, that
appellee was not the sole owner of the property; that she made
false and fraudulent representations in her proof of loss, and
that the property was vacant and unoccupied.    A general
demurrer was sustained to each of these pleas.    The ground
of such demurrer is, that the plea of the general issue was
broad enough to admit all evidence that could have been
admitted under any of the pleas.    The appellant was allowed
to produce before the jury evidence in support of each of
the special pleas, so that no reversible error occurred in that
respect.

It is the opinion of a majority of this court that any evi-
dence tending to show breaches of a policy as set out in these

special pleas may be given under the general issue when the action is in assumpsit, and that therefore the demurrers to the several special pleas in question were properly sustained.

The title to the storehouse premises described in the policy was in Lewis Doyle at the time of his death. It was his homestead. The appellee was then his wife, and at the time of his death lived there with him. They had one child, a daughter, who yet lives.

Upon the death of Doyle, the appellee became vested with an estate of homestead and an interest by way of dower in the premises. It is conceded that she had no other interest, right or title in or to the property. Neither homestead nor dower has been assigned to her. About two years after the death of Doyle, appellee married her present husband, George W. Field, and then removed with him to his home upon a farm owned by him about four miles distant, where she has since and for some four years resided.

She thus became invested with an estate of homestead in the property of her present husband, and necessarily divested of a like unassigned estate in the lands of her deceased husband.

She could not have two unassigned estates of homestead existing at the same time.

Yet the right of recovery in the case at bar, so far as the instructions of the court were concerned, is based wholly upon the alleged existence of an estate of homestead in the appellee. In the third instruction asked for and given for the appellee, the jury were told that an estate of homestead is an insurable interest, and the second instruction given for the appellee is:

" Second. The court instructs the jury that if the plaintiff in this case, on the death of her husband, Doyle, was occupying the premises in controversy as their homestead, and afterward married Mr. Field, and then rented out the premises in controversy and continued to so rent them, and the same were occupied by her tenant at the time of the issuing of the policy in this case—at that time, under law, she had not abandoned her homestead and had an insurable interest therein notwithstanding the fact that she may have been living at some other place with her present husband."

Home Insurance Co. v. Field.

It may be that a widow having an estate of homestead unassigned may remain and live with a second husband even away from her former home, and still retain the homestead estate if she continue in its possession by a tenant, but this is only true when the second husband has no homestead. In the case at bar the second husband owned a farm and lived upon it; the appellee, when the policy was issued, lived there with him as his wife, and had so lived there for some years before. It was his homestead and also her homestead, and she could have but one unassigned homestead. That the present husband of appellee owned the farm upon which he and appellee, husband and wife, lived, was proven and uncontradicted, and such ownership of the husband was a controlling fact in determining whether appellee retained a homestead in the property in question. Its omission made the instruction misleading and could but have led the jury to an erroneous conclusion.

The vice of this instruction is made more effective by instruction number thirteen, also given on request of the appellee, wherein the jury are instructed that " a homestead interest is a life estate giving the appellee the use of the property during her natural life, and that it was her duty and obligation to preserve the buildings on such property, so that the heir succeeding her should not be deprived of his inheritance, and that in estimating the damages, if they found for the appellee, they should assess whatever the evidence shows the value of the buildings to have been at the time of the fire."

This instruction ought not to have been given, because the uncontradicted testimony was, that the plaintiff had no homestead interest in this property, nor do we understand that the law imposes upon a widow having an estate of homestead, the duty and obligation of preserving the buildings by insurance against fire, and of applying money received from such insurance to the rebuilding of the house, so that the heir shall not be deprived of the inheritance, etc.

The instruction also erroneously directs the jury if they found for the appellee, to award her "whatever the evidence shows the value of the buildings to have been." The policy

upon which the action rests provides that the company should not, in any event, be liable for an amount greater than three-fourths of the value of the buildings, and this is fully set out in the declaration filed by the appellee. A further provision in the policy is that the appellant only indemnifies the appellee in an amount not exceeding *her interest* in the property; yet this instruction advises the jury that she, if successful, should recover the value of the buildings, etc. We have examined the series of instructions, and do not find that any of these errors in these instructions were corrected.

The evidence did establish that the appellee had an interest by way of dower in the insured property, but a dower interest is only, at most, a life estate in one-third of the property. It is insisted by counsel for the appellee that her dower right constituted an insurable interest, at least in her, and that under the ruling in Andes Ins. Co. v. Fish, 71 Ill. 620, an insurable estate, whether by title in fee, for life, or merely equitable, entitles the holder thereof to recover the whole amount of the loss. It is true that such was held to be the proper rule applicable to that case, but such ruling is expressly based upon the particular phraseology of the policy then before the court. It is there said: "The policy binds appellant not to pay the assured the damages which shall occur to her interest in the property * * * but all loss or damages * * * to the property; * * * and when it is not otherwise limited in the policy, the assured is entitled, where she has an insurable interest, * * * to the whole amount of damage done to the property."

The policy under consideration before us does expressly limit the appellee's recovery to an amount not exceeding three-fourths of the value of her interest in the property. We know of no reason why this clause of the policy should be deemed inoperative, nor is there any reason resting in justice or fairness, why appellee should in any event recover under this policy more than "her interest in the property." The objection to the competency of the husband of the appellee as a witness in her behalf was properly overruled. The litigation was concerning the separate property of the wife.

and the action was on an insurance policy, and for either of these reasons the husband could lawfully testify in behalf of the wife. Sec. 5, Chap. 51, R. S. Because of the errors indicated, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*