## Home Insurance Company v. Belle Field.

1. INSURANCE—*Fraud a Question for a Jury.*—As to whether statements in the proof of loss were made understandingly, as an attempt to defraud the company, is a question of fact for the jury.

2. ADMISSIONS—*On One Trial Hold Good on Another.*—On the trial of an action it was admitted by both parties that Mr. S. was the agent of the defendant company. The judgment having been reversed, on the next trial proof was properly made of this admission.

3. INSURANCE—*Trials of Disputed Losses—Questions for the Jury.*— On the trial of an action upon an insurance policy the questions as to whether the agent of the company was authorized to waive and did waive prepayment of the premium, which included the question of a binding promise by the assured to pay within the time given therefor; whether the building insured was vacant, within the meaning of the policy, at the time of the fire; whether it was by the fault of the assured that the real interest in the property was not expressed in the written part of the policy; whether the assured attempted by the affidavit in proof of loss to commit a fraud upon the company, and the actual amount of loss by the fire, are all questions of fact for the jury to determine from the evidence.

**Memorandum.**—Action on policy of insurance. Appeal from the Circuit Court of Greene County ; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the November term, 1893, and affirmed. Opinion filed February 12, 1894.

The opinion states the case.

JAMES R. WARD, attorney for appellant.

H. T. RAINEY and MARK MEYERSTEIN, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This case was before us on appeal by the present appellant, at a former term, when the judgment was reversed and the cause remanded, among other reasons, for what is now conceded to have been material error in an instruction given for the appellee. See opinion in 42 Ill. App. 392.

It was an action of assumpsit on a policy of insurance dated

October 31, 1889, for $400, on appellee's one-story frame shingle roof store-building, and $135 on her stock of groceries, wines, pool tables, and fixtures therein, all situated on section 36, T. 12, R. 13, Greene county, Ill., which were totally destroyed by fire on the 24th of November next following. For the loss thus sustained she recovered judgment upon a verdict, on the re-trial, which the court refused to set aside, for $395.50.

The policy provided that the company should not be liable for more than three-fourths of the cash value of the building at the time of the fire, nor for more than that of the interest of the insured, nor for any loss thereunder, until the premium should be actually paid; that if the premises should become vacant or unoccupied, without notice to or consent of the company, in writing, or if her interest was any other than the entire, unconditional and sole ownership of the property insured, and was not so represented to the company and so expressed in the written part of the policy, it should be void; that any fraud or attempt at fraud, by false swearing or otherwise, in making proof of loss, should forfeit all claim against the company under it; and that any person other than the assured who may have procured this insurance should be deemed the agent of the assured and not of the company under any circumstances whatever, or in any transaction relating to this insurance.

It was in fact solicited by one John O. Scott, who had been engaged in that business for a considerable time and brought many applications to Bates & Morrow, the agents at Roodhouse who were authorized by the company to write and issue its policies. He died before the first trial and his testimony was never obtained. Besides the parties, no one was present when the arrangement was made but George W. Field, the husband of appellee. His testimony was that Scott came to see her at the building, took its dimensions, was informed by her of her actual interest in the property, told her the amount of the premium, agreed to give her thirty days time for its payment and promised to leave the policy for her with Mr. Pinkerton, a merchant at Rood-

house; and that she then promised to pay the premium within the time so given. That is all that was shown of the transaction between them at that time. There was no application in writing, but it appears that he obtained the policy from Bates & Morrow and left it with Pinkerton for her, without any condition as to its delivery, unless by the statement that "Field would come in and pay him some money"—the amount being indorsed on the envelope. On the second day after the fire, Field, with knowledge of the loss, did come in, pay him the money and receive the policy. On the same day Pinkerton paid it over to Scott, who paid it to Bates & Morrow, and they to the company—neither of whom knew at the time of its receipt, that the fire had occurred.

In the same inclosure with the store-building, there were a small dwelling house, smoke-house and barn. According to the testimony, the property all together, including the land, was worth less than a thousand dollars. It had belonged to Lewis F. Doyle, a former husband of appellee, who died intestate, in 1882, leaving her, his widow, and a daughter who is still living. At the time of his death the family was occupying the premises as a homestead, and appellee, with her child, continued so to occupy them until 1886, when she married Field, and moved with him to his father's farm, about four and a half miles distant, where they have ever since resided. But she continued to carry on her business in the store building until a few days before the fire, when she rented it, and at the time of the fire, had removed nearly all of her stock, and other personal property therein. The tenant, however, had not then moved in. A man he had employed to clean it up, completed his work about four o'clock in the afternoon of the 23d, and the fire occurred about two o'clock the next morning. He testified that not more than two or three days could have elapsed from the time of her removal of her things to the commencement of his work. It does not appear that she expected, or had any reason to expect, that the lessee would not, or knew that he did not occupy the building immediately upon her removal.

In her affidavit for proof of loss, appellee stated that the building was owned by her in fee simple, and that at the time of the fire, no other person had any interest in it, or any part of it. ` The written parts of the papers constituting the proof of loss, were prepared by one of her attorneys— from what *data* was not shown—and submitted to her for examination, before she subscribed and swore to them. Excepting the statement of her interest as above given, and the alleged extravagance of her claim of loss, which was $400 on the building, $35 on pool table, and $25 on the bar, no criticism is made of these papers. Her husband testified that she told Scott " It was the property left by her first husband, and she had a homestead and dower in it." He also testified that at the time of the fire she was about thirty years of age; and that the building was worth $600. Two carpenters estimated it respectively, at $600 and $625, while appellant's witnesses range in theirs from two to four hundred.

On the former hearing, we understood that the farm on which appellee resided from the time of her second marriage, belonged to her husband, and therefore held that, having acquired a homestead interest there, she was thereby divested of a like unassigned estate in the lands of her former husband. We also understood that she had only an option, but never assumed an obligation to pay the premium on the policy, within the thirty days, or any other time. In this record there is clear and uncontradicted testimony that she did assume that obligation by an express promise, and that her present husband has never owned any land or house or had any estate of homestead. Counsel now say that the former record did contain evidence of both these facts, and that we were misled by their carelessness in presenting the case at that time. However that may be, the opinion shows our view of the law upon both states of the facts. As they now appear, she had a homestead estate and dower interest in the property insured. If she did so tell Scott, she told him the truth. Her interest as stated, however, was not so expressed in the written part of the policy,

as it required. But as has been seen, there was no application in writing, and she never saw the policy nor knew its requirements or provisions until after the premium had been paid and the entire agreement, as actually made, fulfilled on her part. Whether the statement in her proof of loss was made understandingly, as an attempt to defraud the company, was a question for the jury, whose finding from the circumstances shown, seems fairly warranted.

On the first trial it was admitted that Scott was the agent of the company. On the last, plaintiff offered in evidence the official stenographer's notes to prove that admission, and he was permitted, over defendant's objection, to read from them the following: "It is admitted by both parties that Mr. Scott was the agent of this company." The ground of objection was that the admission, according to the evidence offered, was not that of the defendant, but of both the parties, and must be presumed to have been intended to be for that trial only. It was not in terms so limited, nor do we perceive in the fact that it was the admission of both, a reason for holding it any the less effective as against the defendant. The law seems to be that such formal and solemn admissions are in general conclusive, and may be given in evidence even upon a new trial. 1 Greenl. on Ev., Sections 27, 186. And since in this case it did not limit the scope of the agency, we think it should be presumed to have authorized whatever he actually assumed to do in the premises, as such agent, that was not, according to general custom, clearly beyond it. The evidence is that Bates & Morrow, in the exercise of their discretion, did in some cases give credit for the premium, and it does not appear that the company objected. They delivered the policy to Scott without inquiry as to his agreement with appellee, and with instructions as to its delivery, if any, wholly unknown to her. And she was bound by her express agreement, in any event as to loss, to pay the premium within the thirty days. When the loss occurred, she knew nothing of the provision in the policy, that the company should not be liable until it was actually paid; and if Scott was authorized as its agent to give her the

credit claimed, and gave it, she was not bound by that provision. The binding contract, in that case, was made on October 31st, and if she performed it on her part, she was entitled to the benefit of it.

The controverted questions of fact submitted to the jury, were, whether he was authorized to waive and did waive prepayment of the premium, which included the question of a binding promise by her to pay within the time given therefor; whether the building insured was vacant, within the meaning of the policy, at the time of the fire; whether it was by her fault that her real interest was not expressed in the written part of the policy; whether she attempted, by her affidavit in proof of loss, to commit a fraud upon the company, and the actual amount of her loss by the fire. Upon the law, as to these questions, the views of this court are sufficiently indicated in this and its former opinion. A careful examination of the instructions applicable to them, satisfies us that they conformed substantially to those views and that the finding of the jury upon each was reasonably warranted by the evidence. All the reasons stated in the former opinion for the reversal of the judgment then in question seems to have been fully obviated by the proof and rulings on the trial now reviewed. Judgment affirmed.