Ludington, Appellant, vs. Patton and others, imp., Respondents.

*March 22—May 10, 1904.*

*Appeal: Mandate: Judgment in trial court: Wills: Election by widow: Fraud of trustees: Accounting: Insurance: Dower: Interest: Advancements.*

1. Where a cause has been remanded by the supreme court with directions stating the measure of relief to be granted, the trial court should enter judgment in strict accordance with such mandate.

2. The mandate of this court on a former appeal directed that a widow be restored to the situation she would have occupied had she duly elected to take the provision made for her by law instead of that made in her husband's will, and had she seasonably been put in possession and enjoyment thereof,—she to be charged with the legitimate expenses that would have belonged to her to pay if the trustees under the will had rightfully cared for her property as trustees of an express trust. It was indicated that, where practicable, she was to receive *in specie* the property which would have come to her had she made said election, and, where that was not practicable, that she should have an equivalent in money. *Held:*

    (1) The insurance with which the widow should be charged in respect to the homestead and other realty is limited, under

such mandate, to the reasonable cost of protecting her insurable interest, i. e. the value of her contingent and dower rights. [Whether in determining the mesne profits of realty, upon the assessment of damages for wrongful detention of a dower interest, or upon the statement of an account between life tenant and remainderman, insurance, as well as taxes and repairs, should be deducted from gross income, not determined.]

(2) The trustees having, by improvement of unproductive realty, obtained a profit therefrom, and being charged with the value of the use of such realty, insurance, as well as taxes and repairs, was properly deducted from the total rent to determine the net rent; and after apportioning such net rent between the value of the improvements and the value of the realty separate therefrom, one third of the amount apportioned to the latter was properly allowed to the widow on account of her dower interest.

(3) It was error to assign to the widow, as her dower interest in said realty, one third of the rents, issues, and profits thereof as the same had been improved by the trustees, the cost of such improvements being treated in another part of the account as personal property in which she was entitled to share equally with the heirs. The realty should be valued, separate from the improvements, as of the time of the accounting, and she should be allowed, for her interest therein, the value of her dower right according to the principles of law applicable to annuities.

·(4) The widow being entitled under the mandate to a one-seventh interest in a certain mortgage, the trustees should have been charged in her favor with one seventh of the value of said mortgage at the close of the executorship period, with interest thereafter until the final closing of the account.

(5) In stating the account under the mandate all payments made to the widow, over and above the allowances to which she was entitled during the settlement of the estate, should have been charged to her as of the date thereof, and all payments which ought to have been, but were not, made to her should have been charged in her favor against the trustees as of the time they ought to have been made, with interest upon each item down to the closing of the account.

(6) The trial court having, however, treated separately the period of executorship and the following period of trusteeship under the will, and having struck a balance at the end of the former period, and no objection thereto being made by the parties, that method of stating the account is sanctioned by this court,—all payments during such executorship period, either to

the widow in excess of her proper allowances, or to the heirs,. to be charged to them respectively, with interest from the dates. of such payments to the end of said period.

3. Under sec. 3959, Stats. 1898, a delivery of property by one person to another having claims upon his bounty is not to be deemed an advancement unless, at the time of such delivery, it is given that character either by a declaration in the writing making the bestowal, or by an acknowledgment in writing by the recipient, or by an expression of the donor in respect to the matter in charging the property to the donee.

4. Thus, sums of money furnished by a testator to his children in his lifetime and charged to them upon his books in the form. of loans should not be treated as advancements but as a part of the estate in which the widow, who had elected not to take under the will, was entitled to share equally with the children, although the will provided that "all sums advanced and charged' by me to either of my children . . . are to be deemed advancements to said child and to be taken into account" in the distribution of the estate.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed in part, affirmed in part.*

A judgment entered in this cause was reversed as indicated in the report of the case in 111 Wis. 260, 86 N. W. 571. It was there held that the plaintiff—by reason of the fraudulent conduct of A. G. Van Schaick and James E. Patton, executors and trustees under her husband's will, who occupied a position of trust and confidence in respect to her— was entitled to have certain instruments, which they induced her to sign, declared void, and to recover as against them and the property in their hands and the beneficiaries under said will, the benefits *in specie,* or an equivalent thereof, which would have come to her had she duly made her election not to take under such will, which she presumably would have done had she not been deceived by such executors and trustees into taking a different course. The measure of her relief, under the circumstances, was declared as follows:

She must have that part of her husband's estate which

came into the trust as personal property which she would have secured by an election to take under the statute, or have its equivalent, and further have the same *as of the time she would have obtained it in the regular course of the settlement of the estate.* If more than legal interest has been obtained by the trustees for the use of the property in the meantime, she is entitled to the benefit thereof. She must be made good for allowances to which she would have been entitled out of the estate for her support or otherwise had she made her election as indicated, *and have the same as of the time such allowances would have come to her possession in the regular course of the administration of the estate.* She must also have all the other benefits that would have come to her in case of such election, including her proper share of the rents and profits of the real estate of which her husband died seised, including her share of the rent of the Pabst corner, so called, treating such rent as profit issuing out of real estate in which she is entitled to share on the basis of dower. She must account for all the sums of money she has received, and as of the time of the receipt thereof, and she must restore to the estate the Kenwood home in the state of Illinois, which she now occupies, and account for the use thereof. In such accounting the trustees should be allowed their reasonable expenses and charges for caring for the property upon substantially the same basis as if they had administered the same for appellant as trustees of an express trust. The heirs must make restitution of all moneys distributed to them which rightfully belong to appellant, so far as necessary to enable her to obtain the full relief to which she is entitled, and their interests in the estate, now in the hands of the trustees, must be charged with that obligation.

In the proceeding to execute the mandate of this court for the entry of a judgment in accordance with the foregoing, an

interlocutory judgment was rendered in the court below im these words:

Plaintiff "is adjudged to have and be entitled to the same statutory and legal rights in the estate of her husband, Harrison Ludington, deceased, as she would have secured had she, within one year after the filing of the petition for the probate of the will of her husband, filed in the county court for Milwaukee county, in probate, a notice in writing that she elected to take the provisions made for her by law, instead of the provisions made for her in the will of her husband, and that she is entitled to the same dower in his lands, and the same right to the homestead as if her husband had' died intestate, leaving lawful issue, and to the same share of his personal estate as if he had died intestate; and that she be entitled to all allowances to which she would have been entitled out of her husband's estate for her support or otherwise, had she made her election as indicated, . . . and' that she be entitled to have her statutory rights in the personal property belonging to her husband's estate, or have its equivalent in case the same had been converted by said defendants or any of them; and have the same as of the time when she would have obtained it in the regular course of the settlement of the estate of her husband."

Defendants are "required to account in accord with the foregoing provisions of the decree."

Plaintiff is "required to account for all sums of money she has received," and "for the use of the Kenwood home and restore the same to the executors."

All matters of accounting are referred to F. A. Geiger, Esq., referee.

The result of the reference was that plaintiff was found to be entitled to $86,839.53 and costs; also to the use of the homestead during her widowhood, and in case of her marriage to dower interest therein, and in addition findings were

made respecting her dower interest in the other real estate of which her husband died seised, all of which findings were confirmed by the court. Thereupon judgment was rendered in accordance therewith to the following effect:

(1) Plaintiff is "to be tenant during her widowhood, and upon her remarriage the same to be subject to dower, of the homestead" (describing the same), the defendants "to surrender immediate possession thereof" to her.

(2) Plaintiff has a dower right in certain real estate, describing the same.

(3) Her dower cannot be assigned as to such real estate by setting off to her a portion by metes and bounds.

(4) One third of the rents and profits of such real estate is assigned to her, the same to be had and received by her as tenant in common for life with the other owners of such interest.

(5) "The defendants and each of them are hereby directed to surrender immediate possession thereof to the plaintiff."

(6) That plaintiff recover of the persons named $68,-547.19 and costs, making in all $69,856.34, the trust estate to stand charged with the payment thereof.

(7) Further relief may be had according to the findings of the referee or in regard to certain real estate mentioned.

The amount in money adjudged to the plaintiff accorded with that found due her by the referee, less payments made thereon and interest. Various exceptions were taken upon both sides to the findings of the referee and the confirmation thereof, and both sides appealed.

*George P. Miller* and *Hugh Ryan,* for the plaintiff.

For the defendants there was a brief signed by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, and separate briefs by *Jackson B. Kemper,* of counsel, and by *Francis Bloodgood,* of counsel; and the cause was argued orally by *Jackson B. Kemper.*

MARSHALL, J.   The questions raised on this appeal must be
solved by the mandate of this court upon the former appeal.
111 Wis. 260, 86 N. W. 571.   The function of the trial
court in the rendition of the present judgment was limited
strictly to the execution of such mandate; therefore, no ex-
tended discussion of legal questions or citation of authorities
need or will be indulged in in rendering this opinion, nor
will any attempt be made to determine the meaning of the
mandate by rules for judicial construction, it being supposed
that resort to such rules is unnecessary.   The course which
the trial court was directed to take after the determination
of the former appeal was carefully fenced about, and the gen-
eral features plainly pointed out.   Mere details were of
course omitted, as is usual.

In stating the account as to the homestead in which plaint-
iff had a contingent interest as to the whole, and otherwise
a dower interest, the entire expense of keeping up the insur-
ance was charged to her.   That was not warranted by the
mandate.   In plain language it provided for restoring plaint-
iff to precisely the same situation she would have occupied
had she made her election to take the interest in her hus-
band's estate which belonged to her by law and seasonably
been put in possession and enjoyment thereof, she to be
charged with the legitimate expenses that would have be-
longed to her to pay if the trustees had rightfully cared for
her property as trustees of an express trust.   That included
insurance, of course, but only the reasonable cost of protect-
ing her insurable interest, which was limited to the value of
her contingent and dower rights.   *Hartford F. Ins. Co. v.
Haas,* 87 Ky. 531, 9 S. W. 720; *Home Ins. Co. v. Field,* 42
Ill. App. 392.   Whether in determining the mesne profits
of realty in assessing the damages for the wrongful detention
of dower interest or in stating an account between a life ten-
ant and a remainderman, insurance as well as taxes and costs

of repairs should be deducted from the gross income, we do not deem necessary or proper to decide. So the rule on the subject, to be deduced from *Hart v. Hart,* 117 Wis. 639, 94 N. W. 890; *Bonner v. Peterson,* 44 Ill. 253, 261; *Welsh v. London Assur. Corp.* 151 Pa. St. 607, 617, 25 Atl. 142; *Peck v. Sherwood,* 56 N. Y. 615; and *Harrison v. Pepper,* 116 Mass. 288, 44 N. E. 222, cited to our attention, is not material. The rule for this case was settled upon the former appeal. The error in not limiting the insurance expense chargeable to plaintiff on account of her interest in the homestead to such proportion of the total expense of insuring the property as the value of her interest then bore to the entire value, must be corrected.

In adjusting plaintiff's rights as to other insurable real property than the homestead, the referee charged her one third of the expense thereof. That is not in accordance with the mandate for the reason above stated. If plaintiff's interest in the realty had been assigned to her seasonably after her husband's death, she would have received a full third of the rents and profits thereof and been obliged to pay the same proportion of the taxes and repairs. Her insurable interest would have been limited, manifestly, to the value of her life estate in one third of the property, and, obviously, by the terms of the mandate, that is the limit of credit allowance to the trustees in that regard.

In stating the account as to the so-called Broadway property, the value of the use of plaintiff's one-third interest in the unimproved land was determined upon the basis of her having such an interest in the land improved as would be equal to a one-third interest therein unimproved. The entire income from the property was divided accordingly, and plaintiff was charged with a like proportion of the insurance. Complaint is made of that, on the theory that it requires plaintiff to bear a part of the insurance on the improvements, while her interest was in the land only. An examination of

the referee's reasons for proceeding as he did satisfies us that such was not his intention. He acted upon the theory that by the improvement of the realty a profit as to the ground was produced, while otherwise it would have been unproductive; and, as the trustees were to be treated as other fiduciaries in that they were not to be permitted to make a profit off their *cestui que trust,* they were charged with the value of the use of the realty to them, the idea being that the value of such use was the total rent received less insurance, taxes, and repairs. The net rent was apportioned between the value of the realty separate from the improvements, and the value of the improvements, and one third of the former was granted to plaintiff. Plaintiff's counsel do not appear to have objected to the general method adopted for determining the value of the ground rent. It seems clear that, if the method adopted is to stand, the treatment of the insurance matter is a proper part of it. It is quite likely that the referee adopted such method because under the mandate the trustees were not allowed to make a profit off of plaintiff's property, which they might have done, probably would have done, if they had been charged merely with ground rent, the amount thereof being established in the usual way.

Complaint is made because of the treatment of a $4,500 mortgage on property in Chicago, in which plaintiff was entitled to a one-seventh interest under the mandate of this court. There seems to have been but one legitimate way to deal with that, unless plaintiff consented to be a party to the efforts of the trustees to realize thereon otherwise than by enforcing the securities in the ordinary way; and that was to charge the trustees with one seventh of the value of such securities as of the time plaintiff's interest therein should have come to her in the regular course of the administration of her husband's estate. The mandate expressly provided for plaintiff's having the property which would have so come to her *in specie,* or its equivalent in money. That language

was plainly used to the end that plaintiff might secure property of the estate as the same existed at the time of the death of her husband, so far as practicable, and that otherwise an equivalent in money might be rendered to her, thus putting her in the same position she would have occupied had she received the property when it should have reached her in the due course of the settlement of her husband's estate. Proof ought to have been made of the value of the $4,500 mortgage at the close of the executorship period and one seventh thereof charged to the trustees at that time, the same to bear interest thereafter with other funds held by the trustees, belonging to the plaintiff, down to the final closing of the account.

In stating the account, yearly payments to the plaintiff were deducted from the principal sum due her at the time she received such payment, though there was accrued interest out of which the same might have been paid in whole or in part. That was a departure from the command of the mandate awarding to the plaintiff the benefits that would have come to her had she taken regularly under the statute and as of the time such benefits would in that event have reached her in possession, and requiring her to account for money or property received by her, and "as of the time of the receipt thereof." The language of the mandate in respect thereto seems to us entirely unambiguous. The words "as of the time" plainly indicate that plaintiff was to be allowed interest from the time she should have received the principal of her property had she taken under the statute. In no other way, it seems, can effect be given to such words. All payments made to the plaintiff should have been charged to her as of the time they were made, with interest on each such payment from the date thereof to the closing of the account; and all payments that should have been made to her but were not, should have been charged to the trustees as of the date they should have been rendered to her, and with interest upon each

sum from the date of the charge down to the closing of the account.

Complaint is made on the part of the trustees because interest was allowed plaintiff on the $10,678.17 found due her at the end of the executorship period, on account of certain matters, from such end to the closing of the account, and also allowed her interest upon the balance between what was paid and what should have been paid to her for each year, down to such closing. We observe nothing wrong in that by which defendants can reasonably be said to have been prejudiced. So far as the court went in that regard the result is in harmony with the previous mandate, though, as before indicated, the method of stating the account as regards interest was improper.

The referee held that from and after the entry of the judgment plaintiff was entitled to a one-third interest in the Broadway property as improved, and, in harmony therewith and the finding that such interest could not be set off by metes and bounds, the judgment assigned to her one third of the rents, issues, and profits of the property to be received by her as tenant in common with the other owners according to sec. 3871, Stats. 1898. The learned referee and the court seem to have recognized that plaintiff had no such interest in the property in fact, that her interest was limited to one third of the use of the real estate aside from the value created by the expenditure of money thereon by the other owners, such use to terminate with her life; but concluded as indicated, since, as said by the referee, "there is no way under our statute of making any other allotment or admeasurement, and in the absence of such statute an attempt to decree a future interest would be wholly uncertain as to such parties and would be on a shifting basis." The court adopted that view. Both court and referee seem to have overlooked the fact that the mandate of this court, not any statute, or any supposed difficulty at-

Ludington v. Patton, 121 Wis. 649.

tending the enjoyment by plaintiff of her property in the future; was the guide to be followed in determining what interest therein should be awarded to her. Though the mandate provided that plaintiff "must have all the benefits that would have come to her in case she had elected to take under the statute," whether such benefits should be in the form of estate property *in specie,* or an equivalent therefor, was left as a matter of detail to be worked out by the trial court, the inference plainly being that where realty was found to be in the possession of the trustees so circumstanced that plaintiff's dower interest therein could be assigned to her substantially the same as it could have been originally, that course would be taken, and in case of realty sold by the trustees or so changed by them as to render it impracticable to so assign dower to her, she should be awarded an equivalent in money upon the same basis that dower rights are computed and paid in case of a sale of realty and a division of the proceeds where partition can only be made in that way. It was said in the opinion, in effect, that the judgment would not necessarily restore to plaintiff property *in specie* in all cases, but would so bear upon the trustees *in personam* as to compel them to do justice to her at all points. In the light of that feature of the opinion, as well as others, the mandate in its terms, and in spirit throughout, indicates plainly that plaintiff should have restored to her property *in specie* where that can be done justly, and otherwise that she should have an equivalent thereof in money.

If some guide, outside the mandate of this court, were needed for dealing with the Broadway property, it could well have been found, and in harmony with such mandate, by referring to ch. 123, Stats. 1898, which provides that in case a person in possession of land, holding adversely by color of title asserted in good faith, makes improvements, and subsequently is judicially found to be wrongfully possessed thereof, the interest of the true owner is to be limited to the

value of the land less the improvements.    While there was relievable fraud in this case, there was no actual bad faith in the sense the term is used in such chapter.    For that reason this court provided that the trustees in some respects should be treated as having rights, as regards plaintiff, of trustees of an express trust.

If a further guide was needed in the matter under discussion, it could have been found, in harmony with the mandate of this court, in ch. 134, Stats. 1898, which provides that on a sale of land for the purpose of partitioning the same, if it is impracticable to make partition in any other way, any vested dower interest involved may be extinguished by the sale, and in lieu thereof payment be made to the dowress of a sum equivalent to her interest in the land fixed according to principles of law applicable to annuities, she consenting to such payment; otherwise, by investing one third of the entire proceeds of the land for her benefit for life.

Further guidance in harmony with such mandate could have been found in sec. 2176, Stats. 1898, which plainly indicates a legislative policy that in any event a dower right is not to be regarded as reaching beyond one third of the annual mesne profits of the property involved, as the same existed at the time the right becomes vested, with such increase thereof as springs from natural causes.    In the case at hand the proper way to have treated the matter was to have valued the realty as of the time of the accounting, less the improvements made thereon by the trustees, and to have awarded to plaintiff, for her interest therein, the value of her dower right according to the principles of law applicable to annuities.

The learned counsel for plaintiff endeavored to justify the judgment awarding plaintiff a dower interest in the improvements placed on the Broadway property by the trustees, after according to her one seventh of the cost of such improvements, by referring to the ancient rule that if the heirs, after the death of the husband, improve the real estate of which

he died seised and its value is thereby increased, the widow will be entitled to her dower of the land so improved, without any allowance to the heirs on account of the expenditures, citing 1 Washb. Real Prop. (6th ed.) 476; 2 Kerr, Real Prop. § 1007; and *Powell v. Monson & B. Mfg. Co.* 3 Mason, 376. In that counsel seems to have fallen into the same error as that committed by the learned court, of going outside the mandate of this court to find support for the judgment, while tested thereby it must be condemned. How can an award to plaintiff of a one-third interest for life in property as improved, from and after the date of the judgment, be justified, when at such date it included a large sum of money treated in another part of the account as personal property in which the plaintiff was entitled to share equally with the heirs of Mr. Ludington? The mere statement of the question shows the utter absurdity of the proposition. Certainly, no such injustice to the heirs was contemplated by this court in framing the mandate upon the former appeal, nor can be found therein.

The foregoing covers the propositions submitted on plaintiff's appeal.

Between January 1, 1883, and the death of Mr. Ludington, he furnished his children various sums of money, charging the same to them upon his books in the form of loans. Defendants claim that such apparent indebtedness constitutes advancements and should have been treated as such, instead of as part of the assets of the estate, in which plaintiff was entitled to share on an equal basis with Mr. Ludington's children. The will contained this language, following the provision as regards the distribution of the testator's estate:

"In such division no advancement or gift to any of my children prior to January 1st, 1883, is to be considered or taken into account, but all sums advanced and charged by me to either of my children since January 1st, 1883, are to be deemed advancements to said child and to be taken into ac-

count in such distribution. In case of any partial distribution of my estate among my children, my executors and trustees are authorized to deduct any advancements to any child in instalments, as they may deem just, so that none of them shall be deprived of a fair annual income for his or her support."

Counsel for defendants claim that such language characterized the accounts in question as advancements under sec. 3959, Stats. 1898, which reads as follows:

"All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made or if charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant. If the value of the estate so advanced shall be expressed in the conveyance or in the charge thereof made by the intestate or in the acknowledgment of the party receiving it such value shall govern in the division and distribution of the estate; otherwise it shall be estimated according to its value when given, as nearly as the same can be ascertained."

We cannot adopt that contention. The statute is mandatory and must be enforced as written. *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430. It clearly contemplates that a delivery of property by one to another, the latter having claims upon the former's bounty, is not to be deemed an advancement unless it is given that character at the time of such delivery, either by a declaration in the writing making the bestowal, or by an acknowledgement in writing at that time by the recipient of the bounty, or by an expression of the donor in respect to the matter in charging the property to the person receiving the same. It needs no argument to show that the accounts in question are not thus characterized by the reference thereto in the will, the making of which was in no way directly connected therewith. The trial court rightly treated the accounts as assets of the estate to be treated the same as other property in making the division between the heirs and the plaintiff.

Points made by defendants' counsel as to the $4,500 mortgage on property in Chicago, heretofore referred to, are sufficiently answered by what has been said on plaintiff's appeal.

Defendants' counsel suggest that the mandate of this court did not contemplate that plaintiff would be awarded for her dower interest a legal estate in the lands of which her husband died seised. What has already been said sufficiently answers that proposition. The plain purport of the mandate, as before indicated, is that plaintiff should be awarded *in specie* all property she would have received had she seasonably elected to take under the statute, where that is practicable; but where it is otherwise, by reason of the way the property has been handled by the trustees, she should have an equivalent.

A further point is made that interest was not charged to plaintiff upon the money received by her during the executorship period over and above her widow's allowances. That seems to be well taken, and strictly within the letter of the mandate. The language thereof, "she must account for all money she has received and as of the time of the receipt thereof," covers the matter. There can be no very good reason for mistaking the import thereof. All sums of money given to plaintiff prior to the decision of this court upon the former appeal, over and above what she was entitled to for allowances during the settlement of the estate, should have been regarded, in stating the account, as at interest against her, the same as money in the hands of the trustees, which she should have had, was to be regarded at interest in her favor.

Counsel for plaintiff answer that by saying: By not charging plaintiff on sums she received during the executorship period over and above her widow's allowances, she was simply treated the same as the heirs, since large sums of money were paid to them during such period and no interest was charged thereon. What would be the general re-

sult of following the mandate strictly as regards this matter, we do not know. It provides that interest shall be both charged and credited, and of course it must be followed. In the division of the property, if the general plan of the accounting is to stand as regards considering the period the property was handled by the executors separate from the time they handled the same as trustees,—and no serious objection seems to be taken to that on either side,—interest should be in effect charged against each of the seven parties upon all sums received during such period from the date of the receipt thereof to the end of such period, this not to include the amount which belonged to plaintiff as her widow's allowances during the settlement of the estate.

· The foregoing covers all the points that need attention upon either appeal. The result is that judgment must be reversed so far as it awarded to plaintiff a dower interest in the Broadway property, and so far as relates to the statement of the account whereby it was found that there was due plaintiff, June 1, 1903, $69,856.34, and the cause be remanded for a restatement of the account in accordance with the previous mandate of this court and as pointed out herein. To the end that no room may be left for future mistakes in the matter, and to the end that upon the promulgation of this decision this litigation may be brought to a speedy determination, these specific directions are given as to the manner of stating the account:

1. Treat the estate as an entirety, not breaking the same up into parcels and stating an account for each, further than to preserve the referee's classification and findings as to the amount chargeable to the trustees each year for plaintiff's interest as to each class, so far as the same are consistent with this opinion.

2. Continue the plan of treating the executorship period by itself, striking a balance at the end thereof and computing interest thereon down to the closing of the account.

3. Treat as verities the various amounts found chargeable to the trustees for plaintiff's interests in the estate for each year as to each class of property, as indicated in the finding, except as the same need modification to correct errors in respect to insurance matters, payments made to the plaintiff for any year not to be deducted from her credits till the closing of the account, as hereafter indicated.

4. Construct the account for the executorship period ending January 1, 1893, by charging the trustees as of that date $10,678.17 as per finding 1; $335.02 on account of the Broadway property as per finding 2; $12,811.44 with interest at the legal rate from October 1, 1891, to January 1, 1893, as per finding 3; plaintiff's part of the mesne profits of realty treated in finding number 5, down to January 1, 1893; one third of the value of the mortgage mentioned in finding 8 as of January 1, 1893; $927 on account of income from the homestead as per finding 9; and so on through all the findings. Having gathered into the account all items to be debited to the trustees down to January 1, 1893, in manner aforesaid, including plaintiff's interest in the mortgage mentioned, make such additional charges to the trustees as may be necessary to correct the insurance matters in accordance with the opinion, to such date. Credit the trustees with all payments made to plaintiff during the executorship period in excess of her widow's allowances, with interest thereon from the date of the payments respectively, to January 1st, aforesaid. Add to such interest interest on all sums paid to the Ludington heirs during such period from the dates of the payments respectively to January 1st aforesaid, and charge the trustees with one seventh of the aggregate thereof. Make such further charges to the trustees and credits to them as may be necessary to bring the account down to the end of the executorship period, and make the balance thereof the first item in the final statement, charging the trustees therewith and with legal interest from January 1, 1893, down to the closing of the account.

5. Having done as indicated, charge the trustees each year subsequent to the executorship period with the various amounts belonging to the plaintiff for each such year, according to the findings as corrected in respect to insurance matters, and as of the date in each year when the same would have ordinarily been realized by plaintiff in possession had she controlled her property, and charge them with legal interest on each of such amounts from the date of the payment thereof down to the closing of the account.

6. Credit the trustees with all sums for which plaintiff should account according to the findings, not involved in the foregoing, with interest on each item from the time of the payment thereof to the date of closing the account.

7. Value plaintiff's dower interest in the Broadway property as of the date of closing the account in respect thereto as per finding No. 2, and charge the same to the trustees as of that date, with interest thereafter to the date of the final closing of the account.

The account between plaintiff and the trustees, constructed in manner aforesaid, will substantially show the amount she is entitled to in money in accordance with the previous mandate. To such balance interest from the date of closing the account to that of the final judgment, should be added to the costs, pursuant to sec. 2922, Stats. 1898. If the record were sufficiently full to enable us to do so, we would relieve counsel and the trial court from the labor of restating the account and would modify the judgment heretofore entered, in accordance with this opinion, so as to now end this litigation. However, it is thought that with the directions given the parties interested can, without judicial aid, complete the matter ready for the final decree, though it will be left open for such assistance, if necessary, including the taking of further testimony if that be found essential.

*By the Court.*—The money judgment in plaintiff's favor, and that part of the judgment awarding her a one-third interest for life in the Broadway property, are reversed. The

order confirming the referee's report, so far as inconsistent with this opinion, is reversed. The cause is remanded with directions to restate the account between the plaintiff and the trustees, as indicated in the opinion, the latter to be charged with the money value of the former's interest in the $4,500 mortgage and her dower interest in the Broadway property, with interest, as therein indicated, and to enter an amended judgment embodying that part of the former judgment not disturbed upon these appeals, and the result of the new accounting. The judgment appealed from, so far as inconsistent herewith is reversed upon both appeals, and so far as consistent herewith is affirmed upon both appeals. No costs will be allowed in this court to either party. Each will pay the clerk's fees upon one appeal.