ARTHUR, Respondent, vs. ARTHUR, Administrator, Appellant.

*April 27—May 24, 1910.*

*Advancements: Evidence.*

1. Sec. 3959, Stats. (1898)—providing that "all gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made or if charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant,"—excludes by implication all other evidence to prove an advancement than such as is there indicated.
2. The charge in writing by which, under said sec. 3959, an advancement may be evidenced, must be made contemporaneously with the gift or grant.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

This is an appeal from a judgment of the circuit court for Grant county reversing a judgment of the county court of Grant county allowing the final report and account of *Sam-*

*uel Arthur,* administrator of the estate of John Arthur, deceased. The court below made the following findings of fact and conclusions of law:

John Arthur died intestate at the city of Platteville, where he had lived many years, on December 10, 1905, aged eighty-six years. He left as his only heirs his four sons, *James, Samuel* (the appellant), Charles A., and Harry R., all men of middle age. He died owning no real estate, and the inventory of his personal estate amounted to $11,650.50, which included a note from the respondent, *James Arthur,* to his father for $1,663, dated May 23, 1902, which drew interest at three per cent. In January, 1902, and for more than ten years prior thereto, said John Arthur owned a farm of 400 acres in Woodbury county, Iowa. It had been bought for him by his agent, John Rawlings, his brother-in-law, who was during all the time John Arthur owned this farm his agent to rent it and supervise it. Said agent transacted all of the business relative to said farm and made all the settlements for rent, etc., with the tenants. The evidence shows that John Arthur was not upon said farm more than twice while he owned it. Rawlings as such agent rented the farm March 1, 1893, to *James Arthur,* the respondent, and he continued to occupy it as tenant until May, 1902. About the middle of May, John Arthur, by written contract executed at Platteville, contracted to deed this farm to N. J. Bennett for $14,000, said Bennett paying down $3,000 and taking possession at once. Immediately after said contract of sale, Rawlings, acting as agent of John Arthur, had a settlement with *James Arthur* of all matters connected with the tenancy of *James,* including the balance due for rent from *James* to his father, which was found to be $1,663. On the 23d day of May, 1902, *James* gave his father his note for said amount. The father kept the note until his death, and this is the note that is inventoried as a part of John Arthur's estate. The evidence shows that no more than said sum was due from

*James* for the rent of said land, and there is no evidence that. *James* ever rented any other land of his father or that he owed him for anything else.

On February 25, 1903, said N. J. Bennett received a deed. from John Arthur of said farm and settled the remainder of the purchase price, the interest appearing to have been paid to that date. Simultaneously with the delivery of the deed. to him, Bennett gave to John Arthur a note for $1,000 and by his direction executed to each of his sons, Charles A. Arthur and *Samuel Arthur,* a note for $5,000, and secured the two notes by a mortgage on said farm. Bennett has since paid all three of said notes and said mortgage has been released; *Samuel,* Charles, and Harry all joining in the release of said mortgage. In March, 1903, Charles A. Arthur duly assigned to his father, John Arthur, his said $5,000 note and his interest in said mortgage as security for the payment to his father annually until his death of the sum of $150. On the same day *Samuel Arthur* executed a similar assignment to his father of his $5,000 note and his interest in said mortgage to secure a like payment by him. Both of said assignments were recorded in the office of register of deeds of Woodbury county, Iowa, March 14, 1903. After making these mortgages to Charles and *Samuel* and the execution of the assignments to John Arthur as security, John Arthur gave his son Harry Arthur a $5,000 interest John Arthur had by mortgage or otherwise in a farm known as the John Hellmer farm, and took from Harry written security to pay him (John) $150 annually while he lived. Later, for some reason it was arranged between *Samuel* and his father that *Samuel* should transfer to Harry the interest he (*Samuel*) had in the Bennett mortgage, and that *Samuel* should receive a $5,000 mortgage on the Hellmer farm. Accordingly the $5,000 Bennett note was transferred to Harry, and the father executed an instrument in writing purporting to be an assignment of an interest in the Bennett mortgage to Harry.

*Samuel* received said Hellmer mortgage, and the evidence does not show any assignment of the Bennett mortgage from *Samuel* to Harry. The assignment executed by John Arthur to Harry Arthur, dated June 27, 1905, and recorded in the register of deeds' office of Woodbury county, Iowa, on July 1, 1905, recites that John Arthur sells, assigns, and sets over to Harry Arthur "all of the interest in and to a certain indenture of mortgage which I purchased from *Samuel Arthur* on the 9th day of March, A. D. 1903, reserving, however, the sum of $150 annually out of said mortgage or interest therefrom until the date of my death, which said mortgage was executed by N. J. Bennett." The assignment describes the Bennett mortgage, and states that the assignee shall have all the interest of the assignor in said mortgage subject to the payment to him until his death of the sum of $150 annually.

The value of the entire property of John Arthur, including the aforesaid note of *James Arthur* for $1,663, at the time of deeding the farm to Bennett, did not exceed $26,000. James Dolan, an attorney of the city of Platteville, was John Arthur's legal adviser, and appears to have drawn all of the papers that were executed by John Arthur and in evidence in this case. Mr. Dolan testified that John Arthur was averse to making a will, and his testimony, with the other evidence, shows that John Arthur desired to distribute his property equally among his children, reserving enough to insure himself a comfortable maintenance while he lived. On the 28th day of October, 1905, six weeks before his death and four months after making said instrument of assignment to Harry, John Arthur executed the following paper in writing:

"This is to certify that I have made advancements to each of my four sons and only heirs at law out of my estate as follows: To my son *Samuel Arthur* five thousand (5,000) dollars (mortgage on John Hellmer farm, N. E. ¼, sec. 33, T. 3 N., R. 1 W. of the 4th P. M. in Grant county, Wiscon-

sin); to my son *James Arthur* five thousand (5,000) dollars in rent on farm at Oto, Iowa, which farm I afterwards conveyed to N. J. Bennett; to my son Charles A. Arthur five thousand (5,000) dollars, one-half interest in N. J. Bennett mortgage, which mortgage is against the above-mentioned farm at Oto (Iowa); and to my son Harry R. Arthur five thousand (5,000) dollars, one-half interest in N. J. Bennett mortgage, which mortgage is against the above-mentioned farm at Oto, Iowa.

"Dated at Platteville, Grant county, Wisconsin, this 28th day of October, A. D. 1905.     JOHN ARTHUR. [Seal.]

"State of Wisconsin, Grant County—ss.

"Personally came before me this 28th day of October, 1905, the above-named John Arthur, to me known to be the identical person who executed the foregoing instrument, and acknowledged the same to be his free act and deed for the uses and purposes therein mentioned.

"JAMES DOLAN,

"Notary Public, Grant County, Wisconsin.

"My commission expires October 3, 1909."

As conclusions of law it is determined that judgment upon this appeal be entered that that part of the judgment of the county court which determines that John Arthur, deceased, "made no valid advancement to *Samuel Arthur,* Charles A. Arthur, or Harry R. Arthur" be reversed, as likewise all of said judgment providing for the settlement of the administrator's accounts, and distribution of the estate without any charges made for advancements, and directing that said county court, in the settlement of the estate of John Arthur, charge *Samuel Arthur,* Charles A. Arthur, and Harry R. Arthur $5,000 each for advancements received from John Arthur, and that the appellant recover his costs upon this appeal.

Judgment was entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *James Dolan* and *Jones & Schubring,* and oral argument by *B. W. Jones.*

For the respondent there was a brief by *T. L. Cleary* and *E. M. Lowry,* and oral argument by *Mr. Cleary.*

KERWIN, J.   The question in this case is whether the transfer of $5,000 worth of property to each of the three sons of John Arthur—*Samuel,* Charles, and Harry—amounted to an advancement to each of them which should be charged against him in the settlement of the estate of his father.   The court below in a lengthy and able opinion held that the sums given were advancements and not gifts; therefore that each should be charged with the amount so advanced in the settlement of John Arthur's estate.   The grounds of decision of the court below are, in effect, that the evidence tends to show that John Arthur desired to distribute his property equally, and the court recites the certificate set out in the findings, made at least four months after the transfers, to the effect that John Arthur had made advancements to each of his four sons of $5,000; that, independent of the statute regarding proof of advancements (sec. 3959, Stats. 1898), a presumption is raised upon the facts that the gifts were advancements, and that such presumption is controlling unless rebutted by evidence; and that but for sec. 3959, Stats. (1898), he would hold that the gifts to Charles, *Samuel,* and Harry were advancements under the evidence.   The court below then proceeds to discuss sec. 3959, Stats. (1898), and the effect of the certificate referred to and put in evidence, and argues that the statute does not require the charge to be made at the time of making the gifts; that, since the facts and circumstances show that the gifts were intended as advancements, there is nothing in the language of the statute or in reason why the parent afterwards may not in writing declare the gifts to have been advancements, and thereby comply with the statute.   *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430, and *Ludington v. Patton,* 121 Wis. 649, 99 N. W. 614, are referred to and held not controlling.

It may be that, in the absence of a statute prescribing the manner of proving advancements, the proof would have been sufficient to support the findings and judgment below. But in the face of our statute (sec. 3959) we cannot find that it is. The assignments of the $5,000 interest to each of the three sons bear upon their face no evidence that they were advancements. True, the age of John Arthur when the assignments were made, the fact that the property assigned amounted to more than half of his estate, and that he was averse to making a will, and perhaps some other facts and circumstances appearing in evidence, might be sufficient to raise a presumption that the gifts were advancements without the certificate of October 28, 1905, were it not for the statute referred to. But in face of the statute we fail to find sufficient proof, unless the certificate was admissible in evidence. The statute (sec. 3959) provides:

"All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made or if charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant. . . ."

This statute at least by implication excludes other proof of advancement and provides for proving an advancement. *Bulkeley v. Noble,* 2 Pick. 337; *Barton v. Rice,* 22 Pick. 508. In Massachusetts the statute is the same as our own, and in *Barton v. Rice, supra,* the court said:

"The statute does not expressly declare that an advancement shall not be proved in any other manner, but that undoubtedly is the meaning of the statute."

And in *Bigelow v. Poole,* 10 Gray, 104, 105, it is said:

"It is the settled law of this commonwealth that an advancement, whether of real or personal property, made by an intestate to his child or other descendant, must be proved by the evidence prescribed by our statutes, and by no other."

The construction placed upon the statute by the Massachusetts court has been adopted by this court. In *Pomeroy*

*v. Pomeroy,* 93 Wis. 262, at page 266 (67 N. W. 430, at page 431), this court said:

"It follows that the construction given to this statute by the Massachusetts court became, on its adoption here, a part of the law of this state. We therefore hold that parol evidence is inadmissible to prove an advancement; that, though the statute does not expressly declare that an advancement shall not be proved in any other manner than that indicated therein, such is undoubtedly its meaning; that, by prescribing a particular manner for proving an advancement, by implication all other evidence is excluded."

To the same effect is *Ludington v. Patton,* 121 Wis. 649, 662, 99 N. W. 614.

Since the evidence independent of the certificate was not sufficient to establish that the transfers were advancements, the question arises whether the certificate was competent. This certificate was made some four months after all the transfers were completed and delivered, and it is insisted by respondent that it was competent as tending to show the intention of John Arthur and in harmony with the statute, because the statute does not provide when the charge shall be made. The statute, however, has been construed by this court in two cases (*Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430, and *Ludington v. Patton,* 121 Wis. 649, 662, 99 N. W. 614) contrary to the contention of the respondent. In the *Pomeroy Case,* after reviewing the Massachusetts cases under a similar statute, it is held that parol evidence is inadmissible to prove an advancement, and that all other evidence than that prescribed by the statute is excluded by implication. And in the *Ludington Case* it was held that the charge in writing must be made at the time of delivery of the property. The court said (121 Wis. 663, 99 N. W. 618):

"The statute is mandatory and must be enforced as written. *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430. It clearly contemplates that a delivery of property by one to an-

other, the latter having claims upon the former's bounty, is not to be deemed an advancement unless it is given that character at the time of such delivery, either by a declaration in the writing making the bestowal, or by an acknowledgment in writing at that time by the recipient of the bounty, or by an expression of the donor in respect to the matter in charging the property to the person receiving the same."

But it is said in the opinion of the learned trial judge, and so argued by counsel here, that the question as to when the charge of advancement must be made was not involved in the *Ludington Case.* The question of the construction of the statute (sec. 3959) was involved and under consideration, and it is clear from the briefs of counsel in the case that whether the writing or charge referred to in the statute should be contemporaneous with the advance was also regarded in the case by counsel as necessarily considered in construing the statute as applied to the facts of the case then under consideration. It is also clear from the opinion that this court regarded the point as necessarily in the case and one of the propositions upon which the decision of the court rested. But even if we should consider what was said in the *Ludington Case* on the point as *obiter,* we see no reason to depart from the conclusion reached and declared by the court, and we adhere to the construction put upon the statute in that case. The manifest purpose of the statute in making the charge in writing evidence of an advancement is, that the charge must be made contemporaneously with the advancement. This is in harmony with the rule respecting book accounts. In *Marshall v. Coleman,* 187 Ill. 556, at page 580 (58 N. E. 628, at page 636), the court said:

"Book accounts are only admissible in favor of the party who keeps them when the entries are made contemporaneously with the transactions recorded, and the same rule applies to books and entries of deceased persons. 1 Greenl. Ev. (13th ed.) § 118; 1 Whart. Ev. §§ 246, 688; 2 Woerner, Adm'n (2d ed.) § 558; *Nelson v. Nelson,* 90 Mo. 460, 2 S.

W. 413.  'Declarations or book entries of the donor subsequent to the transaction are inadmissible unless they are of the *res gestæ* or against interest.'  2 Woerner, Adm'n (2d ed.) § 558."

See, also, *Young v. Young,* 204 Ill. 430, 68 N. E. 532; *Nelson v. Nelson,* 90 Mo. 460, 2 S. W. 413.

Nor were declarations of John Arthur made after the transfers admissible to prove advancements.  *Kimball v. Leland,* 110 Mass. 325; *Harness v. Harness,* 49 Ind. 384; Thornton, Gifts & Advancements, p. 198, § 224; *Howard v. Howard,* 101 Ga. 224, 28 S. E. 648.  It will be seen that the cases from other jurisdictions are in harmony with the decisions of this court heretofore cited.  Indeed, it is unnecessary to go outside of the decisions of this court.  The *Pomeroy* and *Ludington Cases* are decisive of the propositions involved.

It follows that there is not sufficient evidence to support the findings or conclusions of the court below to the effect that the transfers to the sons of John Arthur, deceased, were advancements, or to warrant the court below in reversing the judgment of the county court in part.  The judgment below must therefore be reversed.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to affirm the judgment of the county court and for further proceedings according to law.