ESTATE OF CLAUS SPRECKELS, DECEASED.

[No. 6977 (N. S.); October 4, 1910.]

Advancement—Definition.—An Advancement is a Provision made by a donor for a child or other heir during the donor's lifetime, by gift of property on account of the share to which the heir would be entitled as heir after the donor's death.

Advancement—To be Considered Part of Decedent's Estate.—Under the Civil Code any advancement made by a decedent to a child or other heir is a part of the estate of the decedent for the purposes of division and distribution thereof among his heirs, and must be taken by the heir toward his share of the estate.

Advancement—How Created.—Under the code such advancement can be created only by a writing showing an intent of the donor to create an advancement; and such intent must be exhibited in one of three ways: It must appear in the instrument of transfer; or it must be acknowledged in writing by the heir, as an advancement; or it must be charged, in writing, by the donor, as an advancement.

Advancement—Intent—Contemporaneous Writing. — To give the character of an advancement to a gift, the intent must appear by a writing made contemporaneously with the gift. Such character cannot be imparted, ex post facto, by a writing at a later date.

Advancement—Change of Gift to Advancement.—A donor may change an advancement into an absolute gift without the knowledge or consent of the donee, but he cannot change an absolute gift into an advancement without the consent of the donee in writing.

Advancement — Partial Intestacy — Code Changes.—An intent to alter a pre-existing law is not to be inferred from a mere change of phraseology in a revision of prior statutes. Under the English statute, and under the statutes of many states of the Union, the rule is well

settled that the doctrine of advancements is applicable only in cases of total intestacy. An examination of the history of the code and a comparison of code contexts show that the California codifiers did not intend to make such a distinction in the use of the word "intestate" in the old statute, and the word "decedent," in sections 1395–1399 of the Civil Code, as would justify the court in holding that it was the purpose to change the well-settled rule that the doctrine of advancements can be invoked only in cases of total intestacy. Therefore the doctrine of advancements cannot be invoked in cases of partial intestacy.

**Advancement—Where a Parent in His Lifetime, had Made Large Gifts** to two of his sons, and in his will made several years later, declared: "I make no provision in this will for my sons J. and A., for the reason that I have already given to them a large part of my estate,"—such declaration does not charge such gifts as advancements under the code. Where a donor has made an absolute gift there is no method in which he can make it effective as an advancement short of a legally executed will disposing of his property.

Charles S. Wheeler, Charles S. Cushing, Nathan M. Moran, J. Friedlander Bowie, Oscar K. Cushing, and W. H. Gorrill, for Executors Claus A. Spreckels and Rudolph Spreckels.

A. F. Morrison, W. I. Brobeck, Peter F. Dunne, S. M. Shortridge and W. N. Hohfeld, for Applicants John D. Spreckels and Adolph B. Spreckels.

## OPINION.

COFFEY, J. We have here (1) an application by Claus A. and Rudolph Spreckels, executors named in the will of Claus Spreckels, for a final distribution of his estate; (2) an application by two others, John D. and Adolph B. Spreckels, alleged coheirs at law, for participation in distribution; (3) an application by an heir, Claus A., that he have an undivided portion of the property of the deceased; (4) an application by an heir, Rudolph, that he have another undivided portion; (5) an application by the trustees of Emma C. Ferris, nee Spreckels, daughter of decedent testator, that they have for her another portion, and that John D. and Adolph B. Spreckels be excluded from any participation in the division or distribution of the estate of decedent; and (6) an application by Rudolph Spreckels and Claus A. Spreckels, as executors of the will of Anna C. Spreckels, deceased, widow

of Claus Spreckels aforesaid, for the distribution to them of the share to which she was entitled in his estate.

The question in each case is whether by reason of certain circumstances the two heirs at law, John D. and Adolph B., are excluded from participation in the distribution of this estate.

It is contended that the estate must be distributed to Claus A. Spreckels, Rudolph Spreckels and Emma C. Ferris, as the three heirs at law of Claus Spreckels, deceased, because the remaining two heirs at law, John D. Spreckels and Adolph B. Spreckels, have already received, by way of what the law terms "advancements," in excess of the shares that would come to them, if they were otherwise entitled, and if those advancements were marshaled for the purpose of making the distribution.

The sections of the statute cited in support of this contention are as follows:

"Sec. 1395, Civil Code. Any estate, real or personal, given by the decedent in his lifetime as an advancement to any child, or other heir, is a part of the estate of the decedent for the purposes of division and distribution thereof among his heirs, and must be taken by such child, or other heir, toward his share of the estate of the decedent.

"Sec. 1396, Civil Code. If the amount of such advancement exceeds the share of the heir receiving the same, he must be excluded from any further portion in the division and distribution of the estate, but he must not be required to refund any part of such advancement; and if the amount so received is less than his share, he is entitled to so much more as will give his full share of the estate of the decedent.

"Sec. 1397, Civil Code. All gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an advancement, or acknowledged in writing as such, by the child or other successor or heir."

It is argued that this question would be readily resolved by a reading of these sections, for they declare in terms unmistakable what shall be done where advancements have been made, and in this case, it would appear that the amount

advanced exceeds the share of the two sons, John D. and Adolph B.; they have received it and it may not be reclaimed; but, if it has been by way of advancement, they are not entitled to participate in this distribution, and the three other children are entitled to the whole estate.

If the applicants, John D. and Adolph B. Spreckels, have received their share by way of advancement they are precluded from participating in this distribution. By the antecedent action of the testator they are disentitled to a distributive interest at the end of the administration of his estate. An "estate" is what a man leaves upon his decease; property which a person leaves to be divided at his death; "see what a vast estate he left his son"; and the decedent here left an enormous estate to be divided among his children. By the terms of his testament he devised his estate in trust to certain of his children; by the fourth paragraph he expressly excluded other children from sharing in distribution. "I make no provision in this will for my sons John D. and Adolph B. Spreckels for the reason that I have already given to them a large part of my estate." Here is a distinct reference to his estate and it is urged that no better language could have been used for the purpose of satisfying the statute as to advancements, which says that "all gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an an advancement."

Herein lies the whole question: What is it to charge as an advancement? Counsel have traversed history from the time of the Merry King to the prosaic present to acquaint us with the law of advancements.

It is essential, say counsel, to go into the history of this law in order that the court may arrive at an understanding of the code sections cited and quoted. History is philosophy teaching by examples; so we must learn, according to argument, from the cases what the statute means. Counsel claim that the spirit of the statute of Charles II is imported into our codes, that we use the term "advancement" in much the same way that it was then used, in the years of grace 1671–1672, and that our law is based substantially upon that stat-

ute, modified in different states, but having its parentage in the time indicated, and, turning again to our California code, it is asserted that we use the term much in the same way that the English statute does. It is insisted that the spirit of the Statute of Charles II is incorporated into our present code—reincarnated as it were.

To illustrate this argument may be inserted the quotations made from this appendix to Thornton on the Law of Advancement:

"All ordinaries and every other person who by this act is enabled to make distribution of the surplusage of the estate of any person dying intestate, shall distribute the whole surplusage of such estate or estates in manner and form following; that is to say, (2) one-third part of the said surplusage to the wife of the intestate, and all the residue by equal portions, to and amongst the children of such persons dying intestate, . . . other than such child or children . . . who shall have any estate by the settlement of the intestate, or shall be advanced by the intestate in his lifetime, by portion or portions equal to the share which shall by such distribution be allotted to the other children to whom such distribution is to be made; (3) and in case any child, . . . who shall have any estate by settlement from the said intestate, or shall be advanced by the said intestate in his lifetime by portion not equal to the share which shall be due to the other children by such distribution as aforesaid; then so much of the surplusage of the estate of such intestate, to be distributed to such child or children as shall have any land by settlement from the intestate, or were advanced in the lifetime of the intestate as shall make the estate of all the said children to be equal as near as can be estimated."

Following this, by way of comparison, to show parentage of our statutory provisions and transfusion of idea, we have the language quoted from our Civil Code, section 1399, and others cited:

"If any child or other heir receiving advancement dies before the decedent. . . . "

"If the estate so advanced . . . or gifts are made as advancements. . . . "

"If the amount of such advancement exceeds the share of the heir receiving the same. . . . "

"Any estate, real or personal, given by the decedent in his lifetime as an advancement."

And also section 1309: "If such children, or their descendants, so unprovided for, had an equal proportion of the testator's estate bestowed on them in the testator's lifetime, by way of advancement, they take nothing in virtue of the provisions of the three preceding sections."

An advancement, in law, is defined to be a provision made by a parent for a child during the parent's life, by gift of property on account of the share to which the child would be entitled as heir or next of kin after the parent's death: Century Dictionary.

Money or property given by a father to his child or presumptive heir, or expended by the former for the latter's benefit, by way of anticipation of the share which the child will inherit in the father's estate and intended to be deducted therefrom. It is the latter circumstances which differentiates an advancement from a gift or a loan.

Advancement, in its legal acceptation, does not involve the idea of obligation or future liability to answer. It is a pure and irrevocable gift made by a parent to a child in anticipation of such child's future share of the parent's estate: Yundt's Appeal, 13 Pa. St. 580, 53 Am. Dec. 496.

An advancement is any provision by a parent made to and accepted by a child out of his estate, either in money or property, during his lifetime, over and above the obligation of the parent for maintenance and education: Ga. Code 1882, sec. 2579; Ga. Civ. Code 1895, sec. 3474.

An "advancement by portion," within the meaning of the statute, is a sum given by a parent to establish a child in life (as by starting him in business), or to make a provision for the child (as on the marriage of a daughter): Taylor v. Taylor, L. R. 20 Eq. 155; Black's Law Dictionary.

"Advancement" has been defined to be that which is given by a father to a child or presumptive heir by anticipation of what he might inherit: Hattersley v. Bissett, 50 N. J. Eq. 577, 25 Atl. 332.

All gifts and grants are made as advancements, if expressed in the gift or grant to be so made, or if charged in writing by the decedent as an advancement, or acknowledged in writing, as such by the child or other successor or heir: Utah Rev. Stats. 1898, sec. 2843; Okla. Rev. Stats. 1903, sec. 6907; N. D. Rev. Codes 1899, sec. 3754; S. D. Civ. Code 1903, sec. 1106; Idaho Civ. Code 1901, sec. 2545; Mont. Civ. Code 1895, sec. 1863; Mich. Comp. Laws 1897, sec. 9072.

According to the decisions under the English and similar American statutes, the ancestor must have died intestate in order to make a gift an advancement: Grattan v. Grattan, 18 Ill. 167, 170.

The idea of the rule is said to be to maintain equality among the children; it is the great moral and equitable principle of equality; that was the purpose of the statute of Charles II, but that statute did not require a charge of expression or acknowledgment in writing, and it might be that under the English rule the transactions in question here would be considered advancements while the contrary would be the case under our code, unless it be found that there is proof of a charge in writing according to the terms of our statute.

Every advancement is a gift, but the converse is not true—every gift is not an advancement. To make the gift an advancement it must be charged as such in writing. The intent to make the gift an advancement is, under our statute, conclusively presumed from the written charge, and this intent is exhibited in any one of three ways: It must appear in the instrument of transfer itself; or, it must be acknowledged in writing, as an advancement, by the child, or, it must be charged in writing by the donor as an advancement. When must this charge be made and in what circumstances will it be deemed sufficient? It is contended, by one side, that the writing need not be contemporaneous, and that no precise form of words is necessary to make the gift an advancement or that any written words by the donor evidencing an intention upon his part that that which he has given shall stand as a provision out of his estate for one of his heirs at law will comply fully with all of the demands of the statute in that regard. The

word "advancement" owes its origin to the design of the decedent to "advance" the prospects of his children in life, and decisions are cited from Massachusetts and Michigan· as apt in their application to show that the writing need not be made at the time of the transfer and that it need not even be signed: Bulkeley v. Noble, 19 Mass. 337. It may be credited as a charge in a book of accounts, subsequent to the transaction. This was held to be in conformity with the statute directing what shall be evidence of an advancement in case of an estate: Paine v. Parsons, 31 Mass. 318; Bigelow v. Poole, 76 Mass. 105. In Michigan like doctrine was declared: McClintock's Appeal, 58 Mich. 152, 24 N. W. 549; Power v. Power's Estate, 91 Mich. 587, 52 N. W. 60.

Counsel says that Michigan is the direct parent of our statute and Massachusetts the grandparent; both the Michigan and the California statutes are of common origin. Therefore the construction of the courts of those states is authority. So that to all intents and purposes the section of the code of California under consideration, so far as the precise point here is concerned, has come to us with its interpretation placed upon it, and the cases cited from those states are controlling upon the proposition that the writing need not be contemporaneous; their statutes do not reequire it and our statutes are similar. In Maine the statute was copied from Massachusetts and the decisions are consonant in construction: Porter v. Porter, 51 Me. 376; Smith v. Smith, 59 Me. 214. The statute is determinative of the character of the evidence—it is exclusive of all other evidence; that is the inexorable nature of the law; consequently it may not be aided by oral testimony. An oral statement or declaration is in no sense evidence of the character of the transaction. The writing is the sole evidence and governs and signifies the nature of the gift: Doty v. Willson, 47 N. Y. 583. It is claimed, therefore, that as we inherit our statutes from Massachusetts, Maine, and Michigan, we are bound by the construction of their courts to the conclusion that the writing need not be contemporaneous, and that any writing of the decedent which sufficiently manifests the intent that the property theretofore made over to his sons. John D. and Adolph B. should stand as a provision for them.

out of his estate, and is a sufficient compliance with all that the statute demands.

It is conceded by the same counsel that there is a somewhat similar statute in Illinois, but he asserts that it differs from ours in certain essential particulars. In Massachusetts and in Michigan the language is similar, "All gifts or grants shall be deemed advancements which are made in compliance with certain requirements, of which three are named, while in Illinois the statute says that "No" gift or grant shall be deemed an advancement unless it is in one of these three ·forms. Here is seemingly a distinction without a difference, but counsel says that the essential difference between the two statutes is obvious; that one enlarges, the other restricts. Emphasis is laid upon this difference, because within a comparatively recent period the supreme court of Illinois has held that there must be a contemporaneous memorandum, but counsel contend that that decision cannot affect this case because it is not our statute, and, if it were, the Illinois statute would not concern us, for Massachusetts had already impressed a character upon the statute agreeable to our legislature before the contrary decisions were rendered. Wisconsin, al·o, it seems, had held that its statute requires a contemporaneous writing, and its language is identical with our own, but it is argued that this is no authority, because it is adverse to the ruling of the supreme court of California: Estate Tompkins, 132 Cal. 173, 64 Pac. 268. It is said that the Wisconsin case is in the teeth of this decision. In the California case decided March 11, 1901, the court said: "If the donor desires that an absolute gift be charged up against any portion the donee will receive at his death, if he die intestate, the only way he can secure the accomplishment of his desire is to execute a will directing that the value of such gift shall be charged to the donee in the final distribution and that his portion shall be reduced by that amount."

In the Wisconsin case it was decided, May 10, 1904, that to constitute an advancement it must be given that character at the time of the transaction by a declaration in the writing making the bestowal, or by an acknowledgment in the same manner simultaneously by the recipient of the bounty, or by

an expression of the donor in respect to the matter in charging
the property to the recipient: Ludington v. Patton, 121 Wis.
651, 653, 662, 99 N. W. 614. In that case the testator charged
in his books, and so stated in his will, certain gifts as advance-
ments, but the court declined to adopt this act as a statutory
advancement, saying that it could not be so considered unless
that character was conferred upon it at the time of delivery.

In another Wisconsin case, decided May 24, 1910, pending
the discussion in the case at bar, Arthur v. Arthur, 143 Wis.
126, 126 N. W. 550, the court said, in the course of its opin-
ion, that it saw no reason to depart from the conclusion
reached in the Ludington case, and it adhered to the construc-
tion therein established that the manifest purpose of the stat-
ute in making the charge in writing evidence of an advance-
ment was that such charge must be made contemporaneously
with the advancement.

In order to appreciate the respective arguments upon these
statutes and their application to this case, it may be well at
this point to insert samples:

California: Statutes of 1850, pages 219, 221, section 7: ''All
gifts and grants shall be deemed to have been made in advance-
ment, if they are expressed in the gift or grant to be so made,
or if charged in writing by the intestate as an advancement,
or acknowledged in writing as such, by the child or other
decedent.''

Civil Code, section 1397: ''All gifts and grants are made as
advancements, if expressed in the gift or grant to be so made,
or if charged in writing by the decedent as an advancement,
or acknowledged in writing as such, by the child or other suc-
cessor or heir.''

Illinois: Hurd's Revised Statutes of Illinois of 1880, pages
421, 422, section 7: ''No gift or grant shall be deemed to have
been made in advancement unless so expressed in writing, or
charged in writing by the intestate, as an advancement, or
acknowledged in writing by the child or other decedent.''

Maine: Revised Statutes of Maine of 1871, page 567, section
5: ''Gifts and grants of real or personal estate to a child or
grandchild are deemed an advancement when so expressed

therein, or charged as such by the intestate, or acknowledged in writing to be such.''

Massachusetts: Revised Laws of Massachusetts of 1902, volume 2, page 1291, section 6: ''Gifts and grants shall be held to have been made as advancements if they are so expressed in the gift or grant to be so made, or if charged in writing as such by the intestate, or acknowledged in writing as such by the party receiving them.''

The original statute of Massachusetts of 1805 differs in some respects from the present statute above quoted.

See the statute cited in the case of Whitman v. Hapgood, 10 Mass. 437, where it is quoted in the statement of the case as follows:

By Statutes of 1805, chapter 90, section 3, it is enacted: ''That all gifts and grants made by the intestate, to any child or grandchild, of any estate real or personal, in advancement of the portion of such child, etc., and which shall be expressed in such gift or grant, or otherwise charged by the intestate in writing, or acknowledged in writing by the child or grandchild as made for such advancement, such estate, real and personal, shall be taken and estimated in the distribution and partition of the intestate's real and personal estate, as part of the same; and the estate so advanced shall be taken by such child or grandchild, towards his share of the intestate's estate.''

Michigan: Compiled Laws of 1871, volume 2, section 4317: ''All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other descendant.''

Vermont: Vermont Statutes of 1894, section 2560: ''Estate, real or personal, given by the intestate, in his lifetime, to a child or other lineal descendant, shall be reckoned toward the share of such child, and for that purpose shall be considered a part of the estate of the intestate. But such estate shall be deemed to be given in advancement only, when in the gift or grant it is expressed to be in advancement or is for the consideration of love and affection; or when such estate is

charged as such by the deceased in writing; or when such estate is acknowledged as such by the heir in writing; or when personal estate is delivered expressly as advancement before two witnesses requested to take notice of it.''

Wisconsin: Revised Statutes of 1858, page 555, section 8: ''All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made, or if charged in writing by the intestate as an advancement, or acknowledged in writing as such by the child or other decedent.''

These suffice to show similarities and verbal variations, retaining substantial identity.

From a comparison of these statutes it would seem that there is no material change of phrase in any; there is evidently a common parentage. The only departure from the common form is in the Illinois statute, and that expresses negatively what the other declares affirmatively. Illinois says that ''*no* gift *or* grant shall be deemed to have been made in advancement''; Michigan, for instance, says that ''*all* gifts *and* grants shall be deemed to have been made in advancement,'' and opposing counsel hang upon the eyelids of this textual variance a disputation as to the application of the authorities, elevating to the height of a great argument as to whether the same proposition stated in affirmative and negative terms imports a radical distinction in essence. It is difficult to discern the distinction drawn by counsel upon this turn of a phrase. The statutes of California enacted in 1850, of Michigan, and Wisconsin, are word for word the same, Illinois is substantially identical; the California Civil Code substitutes the word ''decedent'' for ''inte·tate'' but makes no other material change in verbiage and none in sense. The statute of 1850 was taken literally from the Revised Statutes of Massachusetts of 1836. Michigan in 1847 copied the latter. California followed suit. That seems to be the sequence. Massachusetts is the progenitor. The other states are her statutory children. From this it is argued that the cases in Massachusetts and Michigan are controlling that the writing need not be contemporaneous, since the statutes in those states do not require it and our statutes are the same. So also are

they in Illinois and Wisconsin, where the courts have decided that the written charge must be simultaneous with the gift; but it is contended that the Illinois statute is different from ours, is later in date, and in conflict with the interpretation placed upon our statutes before we adopted it, and that the Wisconsin cases are in conflict with ours: Estate Tompkins, 132 Cal. 174, 64 Pac. 268. As to the asserted difference between our statute and that of Illinois, this court has already stated its inability to perceive wherein they differ. So far as Illinois is concerned, assuming the similarity of the statutes, it is opposed to the theory of advancement: Wilkinson v. Thomas, 128 Ill. 366, 21 N. E. 596.

In the Wisconsin case, cited in the oral argument, where the statute was identical with ours, the testator charged in his books and so stated in his will certain gifts as advancements, but the court decided that that was not a statutory advancement. It refused to adopt the contention of counsel upon this proposition, and said that the statute clearly contemplated that a delivery of property by one to another, the latter having claims upon, "the former's bounty, is not to be deemed an advancement unless it is given that character at the time of such delivery, either by declaration in the writing making the bestowal, or by an acknowledgment in writing at the time by the recipient of the bounty, or by an expression of the donor in respect to the matter in charging the property to the person receiving the same: Ludington v. Patton, 121 Wis. 651, 99 N. W. 614."

In the other Wisconsin case published since the oral argument the main authorities relied upon here are considered and the conclusion reached that the charge in writing must be made at the time of the delivery of the property. The court said that the manifest purpose of the statute in making the charge in writing evidence of an advancement was that it should be contemporaneous: Arthur v. Arthur, 143 Wis. 126, 126 N. W. 550.

This case refers to the Massachusetts citations, remarking that the statute of that state is the same as Wisconsin and has been construed by the courts of the latter state contrary to the contention of the counsel for executors and devisees in

the case at bar. It cites many authorities relied upon here, and concludes that the cases from other jurisdictions are in harmony with the decision and that the construction placed upon the statute by the Massachusetts court has been adopted by Wisconsin. I have considered the criticisms of counsel for executors upon this latest opinion of the Wisconsin court that it does not cite or quote cases from other jurisdictions directly to the point that the statute does not require a contemporaneous charge, and that it entirely ignores the very potent analogy offered by the statute of frauds for the construction of this statute of advancements and makes no investigation into the Massachusetts cases, which had from the first held that the writing need not be contemporaneous; but the decision seems to have examined those cases and to have followed them to the point indicated, saying that in the Pomeroy case, ''after reviewing the Massachusetts case under a similar statute, it is held that parol evidence is inadmissible to prove an advancement, and that all other evidence than that prescribed by the statute is excluded by implication. And in the Ludington case it was held that the charge in writing must be made at the time of delivery of the property. The court said: 'The statute is mandatory and must be enforced as written: Pomeroy v. Pomeroy, 93 Wis. 262, 67 N. W. 430. It clearly contemplates that a delivery of property by one to another, the latter having claims upon the former's bounty, is not to be deemed an advancement unless it is given that character at the time of such delivery, either by a declaration in the writing making the bestowal, or by an acknowledgment in writing at the time by the recipient of the bounty, or by an expression of the donor in respect to the matter in charging the property to the person receiving the same.' ''

It said further, that it was unnecessary to go outside of its own decisions for the Pomeroy and Ludington cases were decisive of the propositions involved; but, nevertheless, it did examine and consider those cases from other states having similar statutes, including Massachusetts, and concluded that they harmonized with its own decisions.

Counsel for executor repeats that this is directly in the teeth of the Estate of Tompkins, 132 Cal. 173, 64 Pac. 268, upon which he relies with confidence. What is the doctrine laid down in this case, which it is claimed disposes of the Wisconsin citation? That doctrine seems to be that where the donor has made an absolute gift, there is no method in which he can make that donation effective as an advancement short of a legally executed will disposing of his property. This doctrine is stated in Woerner, in these words: "The donor can so alter the character of a gift or conveyance as to enlarge the rights and privileges of the recipient, but not so as to restrict them. Hence a father has the undoubted right to change a debt owing to him into an advancement and an advancement into a gift, but not, without the donee's consent, an absolute gift into an advancement."

Also in Thornton, as follows: "A gift vests the absolute title to the property in the donee, free from any and all control over it by the donor. It differs from an advancement chiefly in the fact that it cannot be brought to reduce the portion of the parent's estate that the donee child receives when his parent has died intestate. To permit the donor to change an absolute gift to an advancement without the consent of the donee would materially reduce the value of his prospective interest in his parent's estate. All the cases, therefore, declare that a gift cannot be changed to an advancement without the consent of the donee."

This rule is expressed in 1 Am. & Eng. Ency. of Law, 780: "A donor may change an advancement to an absolute gift without the knowledge or consent of the donee. He cannot, however, reverse the process and deprive the donee of property already his, by changing a gift to an advancement."

It seems to be the law that the only way that a change can be made as against the donee is by his acknowledgment in writing; and there is no such acknowledgment here. The mere declaration in the will is not sufficient under the statute to change a gift into an advancement without the donee's consent; by mutual action an advancement may be changed into a gift, but an absolute gift may not be converted into an advancement without the consent of the donee or by the later

legally executed will which deducts the amount of the absolute gift from the share of the donee.

The sum of all this argument for the excluded heirs is, that what was given to them was an absolute "gift." Decedent testator parted irrevocably with those properties. Every one of these transactions imported an absolute gift, and it was not competent for the donor by any subsequent declaration to change its character. He parted with all power over the property once he made the gifts to his sons John and Adolph, and he could not thereafter restrict or qualify the nature of the act. The only way in which the charge could be made as to the donee is by the latter's acknowledgment in writing: Cal. Civ. Code, sec. 1397.

According to the dominant authorities this charge in writing must be contemporaneous; it may not be ex post facto; it cannot be effected by a recital in a will made several years subsequently; but this will does not charge these gifts as advancements; on the contrary, testator declares in the fourth clause that he makes no provision "in his will" for John and Adolph, because he had already "given" to them a large part of his estate. That was his ex parte and ex post facto declaration, in which there was no written consent of the donee, as by the statute required. When he made the gift it should appear that it was intended as an advancement, otherwise it is an absolute, irrevocable gift; and no subsequent statement, even in a will, can change the original character of a completed transaction. It is a question of intent to be determined by contemporaneous circumstances; always to be ascertained by what took place at the time, and, in the absence of evidence as to this, by the attendant circumstances: Reinoehls' Estate, 212 Pa. St. 360, 61 Atl. 943.

In the Michigan case it would seem that the testator had retained the right of testamentary disposition over the property. It was a case of completed testacy, and therein differs from the case at bar: McClintock's Appeal, 58 Mich. 152, 24 N. W. 549. The other Michigan case, Power v. Power's Estate, 91 Mich. 587, 52 N. W. 60, seems to be strictly a case of contemporaneous charge. Neither of these cases would ap-

pear to be advantageous to the contention of counsel for executors.

These cases do not serve to support the proposition presented by counsel, in the estimation of this court, if they are read aright.

Counsel for executors advert to the effect of the judgment upon the demurrers in the matter of the partial distribution, and insists that that judgment imports total intestacy, and that, therefore, opponents here have no standing.

What was determined by the judgment upon the demurrers in the matter of the partial distribution? The reasoning of the court in coming to its conclusion cannot bind the parties, but the judgment as entered determines the character of the issues submitted and decided, and that judgment or order recites that the matter coming on regularly to be heard upon the demurrers filed by John and Adolph as heirs at law to the amended petition of Claus A. and Rudolph, praying for distribution to them, as trustees named in the will of Claus Spreckels, of certain properties described upon certain trusts and to be by them held to certain uses and purposes in said will set forth, "and it appearing to the court that Anna Christina Spreckels, widow, and named in said will and testament of said Claus Spreckels, deceased, died in the city and county of San Francisco on the 15th day of February, 1910, at the hour of 7 o'clock and ten minues, A. M. of said day, and the death of said Anna Christina Spreckels having been suggested to this court, and the court having the said matters under submission, and being fully advised in the premises, it is hereby ordered, adjudged and decreed that said demurrers be sustained and said amended petition of said Claus A. and Rudolph be refused and denied." This was dated February 18, 1910.

This is the judgment appealed from, the decision of the court, and whether erroneous or correct must stand or fall by its terms. In the course of the opinion this court said: "It appears to be admitted that the first trust purpose declared by the will, to provide an income for the wife is valid; but it is asserted that the second and third trust purposes are

void, because neither is authorized by the statute": 5 Cof. Prob. Dec. 320.

The argument then seemed to turn upon those two trust purposes.

The opinion alluded to said further: "It is admitted that the first trust, for the life of the widow, is valid, and does not exhaust the fee"; and then proceeded to discuss the unity and entirety of the disputed trusts, saying, among other things, that the only way in which the petitioners could come into possession of their parts would be through the transfer from the trustee to them upon the death of the widow of testator. The life trust was treated throughout as removed from the range of argument, and the court's mind appeared to have been occupied with the other paragraphs of the will: 5 Cof. Prob. Dec. 353.

By coincidence the announcement of the decision and the intelligence of the death of the widow were almost simultaneous, but the official and formal document was later in promulgation and minuted date and incorporated the fact, as above recited, of the death of the widow.

Thus the record stands, and, technically, the effect was to declare that the life estate had terminated and the petition of the trustees for partial distribution to them was denied as of that date.

It seemed to have been assumed all around upon the argument that the life estate to the widow was valid and the court accepted that assumption, and the trust as to the remainder of the corpus was assailed and held to be void. There was no contention in the argument upon the life trust. It was not put in issue in the pleadings, and hence cannot be considered as a factor in the solution of this problem. The question was as to the validity of the dispositions in trust dependent upon the death of the widow, and it was these dispositions that were specifically dealt with and held void. As in the New York case, Messman v. Egenberger, 46 App. Div. 46, 61 N. Y. Supp. 556, the testator undertook to create a trust.

The testator, however, had provided in his will, as Claus Spreckels did, that his wife during her lifetime should have the use and benefit of the income of his estate, and the

remainder was cast into this trust which the court held void as suspending the power of alienation for more than two lives in being, and as to property upon which the testator had abortively sought to make that trust operate he died intestate, and that property went the way of the law of intestate succession; and it was sought to apply the doctrine of advancement in that case, but the New York court held that the doctrine could not be applied because there was no total intestacy, that the life interest of the wife in the corpus of this fund was a material and substantial disposition by will and rescued the testamentary document from the allegation that it stood for a total intestacy.

That this construction may defeat the intention of the testator is the result of his endeavor to create an estate which was forbidden by the law, as declared for many decades by our courts, and, as was said in the New York case just cited, decided in 1899, it is the construction given to the statute by the courts in England, from which our statutes came, and we should not be justified at this date in changing what has become a rule of property.

It may be that, by the application of this rule, testator's intent may be frustrated in one case and in another accomplished, yet it must be applied by the court, even though it work both ways, according to circumstances.

We have had in the case at bar much highly technical discussion as to the meaning of the words and phrases, "decedent," "intestate," "an intestate," "the intestate," and whether or not the substitution of one term or phrase for another alters the substance, and counsel for executors argues that the change of the word "intestate" in the statute of 1850 to the word "decedent" in section 1397 of the Civil Code operates an enlargement of the meaning of the term to include testacy, and that, therefore, even if this court hold that this is a case of partial testacy, still it may be construed as within the law of advancement.

An examination of code history will show that our codifiers did not intentionally make any such distinction, and a comparison of code contexts will serve the same purpose. The codifiers seem to have had in mind the English rule which

made total intestacy a postulate for advancement: See Annotated Civil Code of California. In England, as is conceded, there must be a *total* intestacy to invoke the doctrine of advancement. It never has been held there that it applied in any other case. In running our code sections concerning the administration of intestate estates we find these terms, "intestate" and "decedent," used indifferently. Compare, for example, the subdivisions of section 1365 as to the order of persons entitled to administer, and it will be seen that in that statute the word "decedent" is used as the equivalent of a person dying intestate. This is the way in which the New York court undertook to interpret the expression by going to the provisions of the statute governing the granting of letters of administration: Thompson v. Carmichael, 3 Sand. Ch. (N. Y.) 120.

The word "decedent" as used in the Code of Civil Procedure, relating to the granting of letters of administration, should be construed in its usual and ordinary sense, which, as defined by Webster, means a deceased person—that is, one dead; departed from this life. Hence one, though civilly dead, by reason of imprisonment for life, is not a decedent, within the meaning of the statute: Zeph's Estate, 50 Hun, 523, 3 N. Y. Supp. 460. The word "decedent" means either a testator or a person dying intestate: Bouvier's Law Dictionary.

The word "intestate" signifies a person who died without leaving a valid will, and hence the validity of the will is a test as to intestacy: Cameron's Estate, 47 App. Div. 120, 62 N. Y. Supp. 187, 188.

The word "intestate," in its legal and popular sense, means a person who dies without making a will. Such is its meaning in 1 Revised Statutes, page 754, providing that the sum of advancements made to the child of an intestate shall be deducted from his share of the estate, unless the advancements exceed such share, in which case the child shall inherit nothing: Messmann v. Egenberger, 61 N. Y. Supp. 556, 46 App. Div. 46; Thompson v. Carmichael, 3 Sand. Ch. (N. Y.) 120, 129; Kent v. Hopkins, 86 Hun, 611, 33 N. Y. Supp. 767, 768. Within the meaning of this law and rule, a man who dies

leaving a will is not an intestate, although by his will he bequeaths only his personal estate, leaving his real estate undisposed of: Thompson v. Carmichael, 3 Sand. Ch. (N. Y.) 120, 127, 129. Or one who dies devising all of his real estate, or a case of partial intestacy: Kent v. Hopkins, 86 Hun, 611, 33 N. Y. Supp. 767, 768.

It is not necessary to engage further in a consideration of the disputations as to the meaning of these terms. The foregoing remarks and citations are sufficient to justify the conclusion that the code of California cannot be construed to conform to the contention of the counsel for executors. This counsel has argued with characteristic force and ingenuity that our statute applies to partial as well as total intestacy, and he treats that proposition as established, saying with vigor that in California, for the first time in the history of legislation, the law of advancements is made definitely applicable beyond the slightest doubt or question to cases of both total and partial intestacy and to both real and personal property; and his argument is grounded upon this verbal distinction between terms which Mr. Charles O'Conor in the Carmichael case considered ingenious but unreal, and the court in that case seemed to adopt that counselor's view, as may be seen in the citations adready made herein.

I have read the arguments and opinion in that case with care, and, so far as the counsel are concerned, it is not too much to say that in the matter at bar the propositions have been presented with at least equal learning and ability in advocacy.

An intent to alter the pre-existing law is not to be inferred from a mere change of phraseology in a revision of prior statutes, and there is no reason to conclude that our codifiers had any such purpose in mind, and as we have seen in the article relating to granting letters of administration, the word "decedent" was used as synonymous with "intestate."

To interpret this statute otherwise would be to make a constructive intestacy where there was no actual one. This would savor of judicial legislation. The safe course, as pointed out in the Carmichael case, is to follow the plain terms of the

statute and not to attempt innovation, and on the statute itself a total intestacy appears to be contemplaed.

But the counsel for executors in the case at bar says that we have here a new proposition; the first case under our modern legislation. The question has never before arisen, and it is one of original impression, and the general principles of equity and justice should guide the court, for the case presented is without precedent in the books. The counsel declares with great energy that it is now the law, in view of our statute, that if a testator expresses the wish in his will that what he has given some of his children shall stand as their share in his estate, that the provision will be enforced, even if the gifts were not technically "advancements," and even though the testator makes no devise or bequest to any person directly; and counsel insists that in such case the general principles of jurisprudence, of justice and of equity shall be the guiding star that will move the conscience of the court to adopt an enlightened rule, a just and a fair rule—one that is consistent with the entire situation thus presented.

The court is admonished that it is commanded to see to it that the testator's wishes shall prevail, as far as possible, and that this is the cardinal rule in all cases, including those where it is obvious that the will cannot have effect to the full extent, for it is the spirit of all of this legislation that equality shall be effected among children. This is the very spirit of the law of advancements. The court is to seek and to work out of the statute—out of this "transcript of the human affections"—equality as decreed in the statute of distributions through this new law enacted by our legislature.

To this earnest and eloquent plea the response may be made, in the language of the same counsel, that however absurd and without justification the statute law may be, it is so written, and it may be added, that the court is not at liberty to change it by construction. Although, as counsel says, many expressions of judges and text-writers, though confessedly not involving cases of this identical character, tend in the direction of his view, yet they are mere suggestions of sympathy rather than statements of law.

"Many comments are made in text-books and decisions as to the injustice of the rule restricting the statute to cases of total intestacy; but, nevertheless, the law is so written down and embodied in many of the states of the Union through express legislation that advancements are confined to cases of intestate estates."

Counsel thinks, however, that this law is not embodied in the legislation of California, and that there has as yet arisen no case that presents for direct adjudication under a statute worded as is ours, in the light of the past and the present, the precise question here involved. This case is unique of its kind and will be a leading case on this point, and the court is asked to hew out a path in what may be called a pioneer trail.

The difficulty with this argument is that it asks the court to blaze a trail and to hew out a path where this is already a well-defined road which the court must pursue. It is not permitted this tribunal to originate ideas as to what is ab-solute equity and abstract justice. We have a supreme court that insists that its subordinates follow the law as it is set down in the statutes; and in this case we seem to be con-trolled by a statute which requires the manifestation of an advancement by a contemporaneous writing and a total in-testacy.

From these premises the conclusion must be that the estate should be equally divided among the heirs at law.

Decree accordingly.

————

As to Statement in Will as evidence of advancement, see note in Ann. Cas. 1915A, 930. As to when interest is chargeable on advance-ments, on distribution of intestate estate, see note in Ann. Cas. 1912A, 955.