ESTATE OF FONTAINE: LIESSE and others, Appellants, vs. FONTAINE, Administrator, Respondent.

*September 18—October 16, 1923.*

*Descent and distribution: Advancements: How made: Necessity of writing: Form: Parol evidence: Married women: Effect of release.*

1. Where a child accepts and has the benefit of an advancement received as his full share of his parent's estate, he is bound by the provisions of the agreement under which he receives such advancement, provided the arrangement is free from fraud or undue influence on the part of the parent and is satisfactorily proven, or in the manner provided by statute if there is one applicable.

2. Under sec. 3959, Stats., providing that all gifts shall be deemed to have been made in advancement if acknowledged in writing by the child or descendant, a writing executed by a child acknowledging receipt of her share of her father's estate satisfied the terms of the statute although her father did not sign.

3. Parol testimony is admissible to show the surrounding circumstances and the fairness of the agreement and the adequacy of the consideration.

4. Where a father loaned money to his daughter which she was unable to repay, and a settlement was made two years later whereby the father turned over notes he had executed to borrow the money he loaned to the daughter, and she executed a writing acknowledging receipt of the advancement and relinquishing all right to share in his estate, such writing was in legal effect made at the time of the delivery of the property.

5. Where a woman, while married, but deserted by her husband, executed an agreement by which she relinquished her expectancy in her father's estate, in consideration of which a

debt which she had incurred while a *feme sole* was canceled, she had the power to procure the discharge of the indebtedness in that manner, sec. 2344, Stats., providing that where a husband shall have deserted his wife she shall have the right to transact business in her own name and for her own benefit, and the business and its earnings shall not be subject to the husband's control or interference or liable for his debts.
6. A valid agreement by a mother relinquishing all claim to her father's estate is binding on her children.

APPEAL from a judgment of the county court of Brown county: ALVIN E. DAVIS, Acting Judge. *Affirmed.*

This is an appeal from a final judgment distributing the estate of B. Fontaine, deceased. The appellants, *Arthur Liesse, Ella Hallett,* and *Eva Jacqmin,* are children of Matilda Labby, a daughter of the intestate. Matilda Labby died in May, 1909. B. Fontaine died intestate in January, 1910, leaving surviving him his widow and five children. The appellants seek to share in the estate by right of representation.

Letters of administration were issued to *A. B. Fontaine* in May, 1911. He filed a final account as administrator in August, 1912, but never took the necessary steps to close up the estate. In 1921 the appellants filed an application for the settlement and allowance of the administrator's account and the assignment of the residue of the estate to such persons as were by law entitled to it. In October, 1921, they filed objections to the final account and a hearing was ordered. The administrator then filed, as a bar to the right of the appellants, the following instrument:

"March 12, 1901.

"In consideration of the sum of which my father, Benjamin Fontaine, has expended in improving the Cook Hotel property, and which I am unable now to repay him, the sum with interest amounting to over $6,000, I hereby acknowledge that I have received my just share in his estate, and hereby release and surrender all claim or claims which I now have or may hereafter acquire by the death of my said

father, of, in, and to the property, real and personal, constituting or which may constitute his estate.

"MATILDA LABBY.  (Seal.)"

The instrument was signed in the presence of two witnesses and acknowledged before a notary public.

It appeared that Matilda Fontaine married Gustave O. Liesse, who left her, in 1892, a widow with three minor children, the appellants.  His estate consisted of a homestead of the value of $1,000, personal property of the value of $1,700, and a half interest in the Cook Hotel, appraised at $10,000.  The interest in the hotel was devised to the children, the will providing that the widow should receive the income and expend it for the benefit of the children during their minority.

For several years prior to 1899 there had been no net income from the hotel.  In that year the property was repaired and remodeled at a cost of approximately $18,000.  Of this amount $3,000 was supplied by Matilda Labby, $6,000 by Benjamin Fontaine, her father, who had been named executor of the will, and the balance by the owner of the other half interest.  Shortly thereafter the hotel produced a net income of $200 per month.  The property was sold in 1913 for $54,000.

The money furnished by B. Fontaine had been procured on his notes, which he took up prior to March, 1901.  On March 19, 1901, B. Fontaine petitioned the county court to order that the interest of the minors be mortgaged to their mother, Matilda Labby, the petition setting out that the mother was willing to pay the $6,000 indebtedness in case the mortgage was executed.  The mortgage was ordered executed.  One week prior to the petition the writing signed by Matilda Labby, above quoted, had been executed.  The mortgage was in the sum of $9,000, bore no interest, was never recorded, and Matilda Labby never made any claim under it.

In February, 1899, Matilda Liesse married one Labby. She obtained a divorce from him on November 9, 1901, the complaint alleging non-support and cruelty.

The trial court found that when the money was supplied by Benjamin Fontaine it was given as a loan; that in 1901 Matilda was unable to repay it out of her separate estate; that on March 12, 1901, the date on which the instrument in question was executed, a settlement was made whereby her obligation to her father was canceled, and she relinquished any right she might have to share in his estate; and that the mortgage executed on behalf of the children was in pursuance of this agreement.

Judgment was ordered allowing the account of the administrator and assigning the residue of the estate to heirs other than the claimants.

For the appellants there was a brief by *Cady, Strehlow & Kaftan* of Green Bay, and oral argument by *Robert A. Kaftan.*

For the respondent there was a brief by *Silverwood & Fontaine* of Green Bay, and oral argument by *T. P. Silverwood.*

JONES, J.    It is the first objection to the judgment in the trial court that the release of an expectancy as heir before the ancestor dies is void, since at the time the heir has no interest in the estate and there is nothing to release.  This is the common-law rule and it is adhered to in a few jurisdictions.

In some of the cases holding this rule it is said that it is in harmony with the general policy of statutes providing for the distribution of estates and that such agreement on the part of the child may work serious disadvantage.  But it seems to be the rule held by the great weight of authority that when a child accepts and has the benefit of an advancement received as his full share of the parent's estate, he is bound by the provisions of the agreement under which he receives the advancement.

The estate of the parent may increase during his lifetime and for that reason the agreement may operate to the disadvantage of the child. On the other hand, the present use of the sum advanced may be of greater benefit to the child than the probability of receiving a greater sum on the death of the ancestor.

The arrangement by which the advancement is made should be free from fraud or undue influence on the part of the parent and satisfactorily proven, or in the manner provided by statute if there is a statute regulating the subject. Many of the authorities discussing the subject will be found collected in 65 L. R. A. 578; 17 Am. & Eng. Ann. Cas. 725; and in 1 Ruling Case Law, 674, 675.

It is argued by appellants' counsel that an advancement cannot be proven by parol. This proposition is conceded by counsel for respondent. Our statute provides:

"All gifts and grants shall be deemed to have been made in advancement if they are expressed in the gift or grant to be so made or if charged in writing by the intestate as an advancement or acknowledged in writing as such by the child or other descendant." Sec. 3959, Stats.

And this court has held oral evidence to prove an advancement is inadmissible. *Arthur v. Arthur,* 143 Wis. 126, 126 N. W. 550; *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430. It will be observed that the statute does not require that any agreement be signed by both parties.

In the present case there is no writing by the father, but there was a written acknowledgment by the child which satisfied the terms of the statute. Parol testimony showing the surrounding circumstances, the fairness of the agreement, and that there was adequate consideration was properly admitted.

It is earnestly contended by appellants' counsel that the acknowledgment was not made at the time the payments regarded as the consideration were made, and that the written declaration, charge, or acknowledgment required by the statute must be made at the time of the delivery of the

property.   This proposition is also conceded by the respond-
ent's counsel and is supported by the decisions of this court.
In *Ludington v. Patton,* 121 Wis. 649, 663, 99 N. W. 614,
it is said of the statute:

"It clearly contemplates that a delivery of property by one
to another, the latter having claims upon the former's
bounty, is not to be deemed an advancement unless it is
given that character at the time of such delivery, either by
a declaration in the writing making the bestowal, or by an
acknowledgment in writing at that time by the recipient of
the bounty, or by an expression of the donor in respect to the
matter in charging the property to the person receiving the
same."

Counsel for respondent reply that this requirement of the
statute was fully complied with.   It is true that the sum of
$6,000 was not expended on the day the release was exe-
cuted.   The money for remodeling the hotel had been paid
by the intestate at various times when it became necessary.
We are satisfied from the testimony, the findings of the
court, and the terms of the release that they had not been
regarded by either party as mere gifts without any consider-
ation.

In a critical situation B. Fontaine came to the aid of his
daughter and afforded such relief as she might not have ob-
tained from any other source.   But evidently neither he nor
his daughter felt that in the final settlement of his estate she
should be preferred to the other five children.   They there-
fore had a settlement on the day the release was executed.
There was no question but that the $6,000 had been ex-
pended for the benefit of the daughter and her children.

The father had borrowed the money with which to make
such payments, for which he had given his notes.   Contem-
poraneously with the execution of the release in which the
daughter admitted her indebtedness of over $6,000, these
notes were turned over to her.   The amounts paid by B.
Fontaine had not been treated as gifts or so regarded by
either party, but as sums for which the daughter was in-

debted, and there had been no transfer of property. It is plain from the testimony that both parties understood and agreed that she had an expectancy in her father's estate but was indebted to him in the sum of $6,000 or more. It was further agreed, as shown by the writing and the acts of the parties, that she released all right to the estate in consideration of the release to her of her indebtedness. If her debt to her father had been evidenced by her promissory note which was canceled contemporaneously with the execution of the release, there would be no doubt that the delivery of property and the acknowledgment of the advancement would be at the same time. We do not consider that the transaction as proven was any different in legal effect. In the cases relied on by appellants, *Arthur v. Arthur,* 143 Wis. 126, 126 N. W. 550, and *Ludington v. Patton,* 121 Wis. 649, 99 N. W. 614, there was no bestowal of property of any kind at the time of the alleged charge of the advancement.

Appellants' counsel urge that the mortgage of $9,000 in the county court proceedings was not authorized by the statute. Whether the county court had the power to make a valid order for the execution of the mortgage does not seem material since we are now dealing with the question whether the transaction between the parties at the time of the release was binding. Although a mortgage was executed to Mrs. Labby to secure her for the $6,000 she had procured to be expended by her father and $3,000 advanced from her separate estate, she seems never to have exacted payment of the mortgage, and no question was raised as to its validity for about twelve years after the majority of the youngest of her children.

It is another objection raised to the judgment that when the release was executed, Mrs. Liesse, or Labby, was a married woman and therefore under disability to make a relinquishment of her share in her father's estate. It is true that she was then a married woman, but when the indebtedness

for $6,000 was incurred she was a widow.   When the agreement was made to cancel that indebtedness and relinquish her expectancy she had been deserted by her second husband and was obliged to bear the burdens of an abandoned wife with her family of minor children.   In that sad condition she had the right to rely on the following statute:

"When the husband of any married woman shall have deserted her or shall from drunkenness, profligacy or any cause neglect or refuse to provide for her support or for the support and education of her children she shall have the right to transact business in her own name and to collect and receive the profits of such business, her own earnings and the earnings of her minor children in her charge or under her control, and apply the same for her own support and the support and education of such children.   Such business and earnings shall not be subject to her husband's control or interference or liable for his debts."   Sec. 2344, Stats.

It is by no means clear that even if Mrs. Labby had been a married woman living with her husband during all these transactions she could not have incurred the indebtedness and made the relinquishment for the consideration shown.

She had a small separate estate, but was wholly unable to pay one half the cost of reconstructing the hotel.   A proceeding in partition must have been disastrous, as she was unable to protect her interest at a sale.   By her husband's will she was charged with the duty of collecting the income from the property for the support of her family.   Could she not, under the general married woman's statutes, incur indebtedness and acquire the means of making the property productive?

We shall not review the many cases on this subject or decide this question, since we hold that under the existing circumstances she had the power under the statute above quoted to incur such indebtedness and procure its discharge in the manner already stated.

Counsel for appellants make the point that even if the agreement was binding on Mrs. Labby it was not binding

on her children, but the weight of authority is otherwise. *Simpson v. Simpson,* 114 Ill. 603, 4 N. E. 137, 7 N. E. 287; *Quarles v. Quarles,* 4 Mass. 680; *Kenney v. Tucker,* 8 Mass. 143; *Coffman v. Coffman,* 41 W. Va. 8, 23 S. E. 523; *Power's Appeal,* 63 Pa. St. 443; 1 Ruling Case Law, 675.

We are convinced that the findings of the trial court were sustained by the evidence and that the judgment should be affirmed.

*By the Court.*—Judgment affirmed.